# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAIKER ALEJANDRO ESPINOZA ESCALONA, *et al.*,

*Plaintiffs–Petitioners*,

v.

KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity, *et al.*,

*Defendants–Respondents*.

Case No: 25-cv-604-CJN

## PLAINTIFFS-PETITIONERS' REPLY BRIEF IN SUPPORT OF EMERGENCY MOTION FOR STAY OF TRANSFER TO GUANTÁNAMO

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 1

I.    Plaintiffs Have Standing to Seek a Stay. ......................................................................... 1

II.   Plaintiffs' APA Claim Is Cognizable. .............................................................................. 6

III.  The Court Has Jurisdiction Over Plaintiffs' Claims. ...................................................... 8

IV.   This District Is the Proper Venue for Plaintiffs' Claims. .............................................. 13

V.    Plaintiffs Are Likely to Succeed on the Merits. ............................................................ 14

      A.  Transferring Individuals from the U.S. to Guantánamo Violates the INA. .......... 14

          1. The INA Does Not Authorize Extraterritorial Immigration Detention ................ 14

          2. Transfer of Detainees to Guantánamo Constitute Unlawful Removals ............... 17

      B.  Defendants' Implementation of President Trump's Memorandum Is Arbitrary and
          Capricious ............................................................................................................. 19

      C.  Transfer To, And Detention In, Guantánamo Will Violate Plaintiffs' Substantive
          Due Process Rights. .............................................................................................. 20

VI.   Transfer to Guantánamo Would Cause Plaintiffs Irreparable Harm, and the Balance of
      Equities and Public Interest Support Granting Stays. ................................................... 25

CONCLUSION ............................................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*A.M.P.V. by & through next friend Aguayo v. Barr*,
    No. 20-CV-913 (RDM), 2020 WL 2079433 (D.D.C. Apr. 30, 2020) .......................................11

*Aguilar v. U.S. Immigr. & Customs Enf't*,
    510 F.3d 1 (1st Cir. 2007) ............................................................................................ 12

*Aguilera-Ruiz v. Ashcroft*,
    348 F.3d 835 (9th Cir. 2003) ....................................................................................... 17

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
    No. CV 25-00400 (AHA), 2025 WL 485324 (D.D.C. Feb. 13, 2025)................................... 20

*Al Janko v. Gates*,
    831 F. Supp. 2d 272 (D.D.C. 2011) .............................................................................. 15

*Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*,
    No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) ................................ 21, 22

*Aracely, R. v. Nielsen*,
    319 F. Supp. 3d 110 (D.D.C. 2018).............................................................................. 8, 14

*Arce v. U.S.*,
    899 F.3d 796 (9th Cir. 2019) ........................................................................................11

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015) ..................................................................................................... 6

*Banks v. Booth*,
    468 F. Supp. 3d 101 (D.D.C. 2020)............................................................................... 24

*Bell v. Wolfish*,
    441 U.S. 520 (1979) .................................................................................................... 21

*Biden v. Nebraska*,
    143 S. Ct. 2355 (2023) ................................................................................................ 15

*Block v. Rutherford*,
    468 U.S. 576 (1984) .................................................................................................... 20

*Bowrin v. U.S. I.N.S.*,
    194 F.3d 483 (4th Cir. 1999) .........................................................................................11

*Brown v. Plata*,
    563 U.S. 493 (2011) .................................................................................................... 22

*C.G.B. v. Wolf*,
  464 F. Supp. 3d 174 (D.D.C. 2020) ................................................................. 20, 22

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ......................................................................................... 3

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) ....................................................................................... 3

*Cmty. for Creative Non-Violence v. Unknown Agents of U.S. Marshals Serv.*,
  791 F. Supp. 1 (D.D.C. 1992) ........................................................................ 2

*D.A.M. v. Barr*,
  474 F. Supp. 3d 45 (D.D.C. 2020) ................................................................ 10

*Damus v. Neilsen*,
  313 F. Supp. 3d 317 (D.D.C. 2018) ............................................................... 13

*Dep't of Commerce v. New York*,
  588 U.S. 752 (2019) ................................................................................... 8, 9

*Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*,
  591 U.S. 1 (2020) ................................................................................ 7, 9, 10

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
  950 F.3d 177 (3d Cir. 2020) .......................................................................... 11

*Edison C. F. v. Decker*,
  No. CV 20-15455 (SRC), 2021 WL 1997386 (D.N.J. May 19, 2021) ................. 13

*Fogo De Chao (Holdings) Inc. v. DHS*,
  769 F.3d 1127 (D.C. Cir. 2014) ..................................................................... 12

*Gandarillas-Zambrana v. Bd. of Immigr. Appeals*,
  44 F.3d 1251 (4th Cir. 1995) ........................................................................ 13

*Garcia v. Att'y Gen.*,
  553 F.3d 724 (3d Cir. 2009) .......................................................................... 11

*Garvey v. Admin. Rev. Bd.*,
  56 F.4th 110 (D.C. Cir. 2022) ....................................................................... 16

*Gomez v. Trump*,
  485 F. Supp. 3d 145 (D.D.C. 2020) ................................................................ 8

*Grace v. Barr*,
  965 F.3d 883 (D.C. Cir. 2020) ........................................................................ 9

*Guangzu Zheng v. Decker*,
　No. 14CV4663 MHD, 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014)....................................... 10

*Handa v. Crawford*,
　312 F. Supp. 2d 1367 (W.D. Wash. 2004) ................................................................. 18

*Helling v. McKinney*,
　509 U.S. 25 (1993) ............................................................................................ 22

*Hernandez Roman v. Wolf*,
　No. EDCV2000768TJHPVCX, 2020 WL 5797918 (C.D. Cal. Sept. 29, 2020)..................... 22

*Jacinto-Castanon de Nolasco v. U.S.I.C.E.*,
　319 F. Supp. 3d 491 (D.D.C. 2018) ........................................................................ 21

*Jacquet v. Hodgson*,
　No. CIV.A. 03-11568RWZ, 2003 WL 22290360 (D. Mass. Oct. 6, 2003) ........................... 10

*Jama v. I.N.S.*,
　329 F.3d 630 (8th Cir. 2003) ..........................................................................10, 11

*Jennings v. Rodriguez*,
　583 U.S. 281 (2018) ......................................................................................11

*Judulang v. Holder*,
　565 U.S. 42 (2011) ........................................................................................ 9

*Kansas v. Crane*,
　534 U.S. 407 (2002) ..................................................................................... 21

*Kingsley v. Hendrickson*,
　576 U.S. 389 (2015) ..................................................................................... 24

*Kiobel v. Royal Dutch Petroleum Co.*,
　569 U.S. 108 (2013) ..................................................................................... 16

*Kucana v. Holder*,
　558 U.S. 233 (2010) ................................................................................ 12, 13

*Las Americas Immigrant Advoc. Ctr. v. Wolf*,
　507 F. Supp. 3d 1 (D.D.C. 2020)........................................................................ 7

*Madu v. U.S. Atty. Gen.*,
　470 F.3d 1362 (11th Cir. 2006) .......................................................................11

*Make the Road New York v. McAleenan*,
　405 F. Supp. 3d 1 (D.D.C. 2019)..................................................................... 5, 6

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ................................................................................................ 20

*N.Y. Rep. State Comm'n. v. SEC*,
    927 F.3d 499 (D.C. Cir. 2019) ........................................................................ 2, 3, 4

*Narragansett Indian Tribal Hist. Preserv'n Off. v. FERC*,
    949 F.3d 8 (D.C. Cir. 2020) ................................................................................... 2

*Nicusor-Remus v. Sessions*,
    902 F.3d 895 (9th Cir. 2018) .......................................................................... 17, 18

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ............................................................................................... 4

*Poullard v. Fed. Bureau of Prisons*,
    535 F. Supp. 2d 146 (D.D.C. 2008) ..................................................................... 13

*Procunier v. Martinez*,
    416 U.S. 396 (1974) ............................................................................................. 24

*R.I.L-R v. Johnson*,
    80 F. Supp. 3d 164 (D.D.C. 2015) .............................................................. 7, 8, 21

*Ramirez v. U.S. Immigr. & Customs Enf't*,
    310 F. Supp. 3d 7 (D.D.C. 2018) ....................................................................... 6, 7

*Reno v. Am.-Arab Anti-Discrim. Comm.*,
    525 U.S. 471 (1999) .......................................................................................10, 11

*Reyna ex rel. J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ......................................................................... 12, 13

*RJR Nabisco v. Eur. Cmty.*,
    579 U.S. 325 (2016) ............................................................................................. 14

*Sierra Club v. DOT*,
    125 F.4th 1170 (D.C. Cir. 2025) ........................................................................... 2

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ............................................................................................... 2

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ............................................................................................... 3

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ............................................................................................... 2

*Swanson Group Mfg. v. Jewell,*
  790 F.3d 235 (D.C. Cir. 2015) ................................................................................ 4

*Thompson v. D.C.,*
  832 F.3d 339 (D.C. Cir. 2016) .............................................................................. 24

*TikTok Inc. v. Garland,*
  122 F.4th 930 (D.C. Cir. 2024) ............................................................................... 2

*TikTok Inc. v. Trump,*
  507 F. Supp. 3d 92 (D.D.C. 2020) ..................................................................... 8, 25

*United States v. Al-Iman,*
  373 F. Supp. 3d 247 (D.D.C. 2019) ....................................................................... 16

*Util. Air Regul. Grp. v. EPA,*
  573 U.S. 302 (2014) .............................................................................................. 15

*Van Colln v. Cnty. of Ventura,*
  189 F.R.D. 583 (C.D. Cal. 1999) .......................................................................... 24

*Van Dinh v. Reno,*
  197 F.3d 427 (10th Cir. 1999) ............................................................................... 13

*Vetcher v. Sessions,*
  316 F. Supp. 3d 70 (D.D.C. 2018) ........................................................................... 8

*Vote Forward v. DeJoy,*
  No. CV 20-2405, 2021 WL 1978805 (D.D.C. May 18, 2021) .................................. 2

*Webster v. Doe,*
  486 U.S. 592 (1988) ................................................................................................ 9

*Wilkinson v. Austin,*
  545 U.S. 209 (2005) .............................................................................................. 23

*Wong Wing v. United States,*
  163 U.S. 228 (1896) .............................................................................................. 21

*Wood v. United States,*
  175 F. App'x 419, 420 (2d Cir. 2006) ................................................................... 13

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ................................................................................... 12, 13, 21

*Zaidan v. Trump,*
  317 F. Supp. 3d 8 (D.D.C. 2018) ............................................................................. 2

*Zhang v. Napolitano*,
    604 F. Supp. 2d 77 (D.D.C. 2009)................................................................................. 10


**Statutes**

5 U.S.C. § 701(a)(1) .................................................................................................................. 8

5 U.S.C. § 701(a)(2) .................................................................................................................. 8

8 U.S.C. § 1101(g) ................................................................................................................... 17

8 U.S.C. § 1231(g) ............................................................................................................... 9, 16

8 U.S.C. § 1231(g)(1) .............................................................................................................. 12

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................................................................. 9, 12

8 U.S.C. § 1252(b)(9) ...............................................................................................................11

8 U.S.C. § 1252(g) .................................................................................................................... 9

28 U.S.C. § 1391(b)(1) ............................................................................................................ 13

28 U.S.C. § 1391(b)(2) ............................................................................................................ 13


**Regulations**

Execution of Removal Orders: Countries to Which Aliens May Be Removed," 69 Fed. Reg.
    42,901, 42,904 (July 15, 2004)........................................................................................ 18


**Other Authorities**

Br. of Pet., *McNary v. Haitian Ctrs. Council, Inc.*,
    No. 92-344, 1992 WL 541276 (U.S. 1992)..................................................................... 14

Br. for Resp., *Rasul v. Bush*,
    Nos. 03-334 & 03-343, 2004 WL 425739 (U.S. Mar. 3, 2004) ...................................... 15

## INTRODUCTION

The ten Plaintiffs in this case seek a stay on their transfer to Guantánamo in light of the irreparable harm they would face if subject to unlawful, extraterritorial detention, unsanctioned removal, arbitrary and capricious agency action, and punitive conditions. The government devotes considerable time to various threshold arguments, but none prevent this Court's review of Plaintiffs' claims. Plaintiffs—all detained men with final orders of removal—are at the government's mercy, one step away from the transfers they seek to avoid. Tellingly, while the government submits that none of the Plaintiffs are at imminent risk of transfer to Guantánamo through March 17, 2025, it will not disclaim plans to transfer Plaintiffs after that date. Moreover, neither the Administrative Procedure Act (APA), nor the Immigration and Nationality Act (INA), bars review of Plaintiffs' claims, which do not challenge discretionary decisions but rather the authority to engage in an unlawful policy. Finally, the government's merits response rests primarily on arguments that contradict their long-standing position about the lack of authority for immigration detention at Guantánamo, novel positions that have no support in the statute or case law, general invocations of deference, and unfounded justifications for this unprecedent policy.

## ARGUMENT

### I.    Plaintiffs Have Standing to Seek a Stay.

The government contends that none of the Plaintiffs have shown a sufficient risk that they will be transferred to Guantánamo. Yet one Plaintiff was on his way to the airfield when his lawyer pulled him off the bus to stop his transfer to Guantánamo. ECF No. 3-6, Decl. of Jennifer Babaie, ¶ 19, *Las Americas Immigr. Advocacy Ctr. v. Noem*, No. 25-cv-418 (D.D.C. Feb. 12, 2025) (discussing Plaintiff Espinoza Escalona). Two others were told by ICE officers that they must agree to removal to Mexico (even though they are Venezuelan) or face transfer to Guantánamo. ECF No.

1

2-7, Berrios Laguna Decl. ¶ 4; ECF No. 2-9, Torcati Sebrian Decl. ¶ 5. Defendants' only response is that these threats were made by low-level officers. Opp. 14. But as this Court has recognized, the stated intentions of government officials can show that future harm is likely. *See Cmty. for Creative Non-Violence v. Unknown Agents of U.S. Marshals Serv.*, 791 F. Supp. 1, 5 (D.D.C. 1992).

All ten Plaintiffs have a substantial risk of being transferred to Guantánamo that is sufficient to satisfy standing. That the government contests standing even for the Plaintiff who was on the brink of transfer and the two threatened with transfer highlights its extreme position.[1]

A plaintiff can satisfy Article III's standing requirement by showing that there is a "substantial risk that the harm will occur" in the future. *Sierra Club v. DOT*, 125 F.4th 1170, 1182 (D.C. Cir. 2025); *see also Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158, 164 (2014).[2] Plaintiffs have established that they face a substantial risk of being sent to Guantánamo. Mot. 10–11.[3] In addition to the three discussed above, all Plaintiffs "fit the profile of people that the

---

[1] The government's argument that Plaintiffs "cannot demonstrate an actual injury" because they "have not been transferred"—yet—to Guantánamo, Opp. 8–9, is simply a repackaged version of the incorrect argument that Plaintiffs' injuries are too speculative to confer standing. *See infra*. Plaintiffs' injuries are *future* injuries, but the fact that those injuries have not yet materialized does not make them any less concrete or particularized. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016). Nor is the government correct that *Vote Forward v. DeJoy*, 2021 WL 1978805 (D.D.C. May 18, 2021), held that "standing to seek forward-looking injunctive relief requires plaintiffs to show that they are suffering an *ongoing* injury." *Id.* at *23 (cleaned up) (emphasis added). The government leaves out the rest of that sentence, which makes clear that plaintiffs have standing by showing an ongoing injury "*or . . . an immediate threat of injury*.". *Id.* (emphasis added); *accord Narragansett Indian Tribal Hist. Preserv'n Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020).

[2] *See e.g.*, *Sierra Club*, 125 F.4th at 1180 (environmental groups had standing to challenge rule not yet in effect but would, in the future, lead to increased hazardous train travel along routes members lived, worked, and recreated in); *TikTok Inc. v. Garland*, 122 F.4th 930, 947 (D.C. Cir. 2024) (same for app maker challenging statute not yet in effect but would subject it to a "significant risk of incurring monetary penalties" and to suspensions from third party platforms); *see also Zaidan v. Trump*, 317 F. Supp. 3d 8, 20 (D.D.C. 2018) (same for journalist challenging his placement on the government's "kill list" even though he had not yet been killed).

[3] "Mot." refers to Plaintiffs' Brief in Support of Motion for Stay of Transfer, ECF No. 2-2, and "Opp." to Defendants' Opposition, ECF No. 14. Page numbers refer to the pagination of each brief.

government has targeted for transfers" at the time of filing suit. *Id.* at 10. Plaintiffs are all men with final orders of removal; the majority are Venezuelan; several have tattoos and have been accused of gang membership—the precise group singled out by the President, DHS Secretary, and Secretary of Defense in their Guantánamo remarks.

The government relies almost exclusively on three cases: *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), and *Summers v. Earth Island Inst.*, 555 U.S. 488 (2009). But, unlike in *Clapper*, Plaintiffs here do not "rel[y] on a highly attenuated chain of possibilities," 568 U.S. at 410, including that "independent decisionmakers" like the Director of National Intelligence and Article III judges would all "exercise their discretion in a specific way," *N.Y. Rep. State Comm'n.*, 927 F.3d at 504–05 (discussing *Clapper*). Plaintiffs' standing also does not depend on a series of practically random events as in *Lyons*, where the Court denied standing based on the speculation that the plaintiffs there would, without provocation or resistance, be stopped by police in the future, choked by the arresting officers, and rendered unconscious. 461 U.S. at 105. Nor is Plaintiffs' standing based on a generalized claim of injury that depends on a chain of unlikely events like the one the Supreme Court rejected in *Summers*, where the plaintiff challenged an environmental regulation by presenting vague "plans to visit several unnamed national forests," where the chances were remote that he would "stumble across a project tract unlawfully subject to the regulations . . . [and] about to be developed by the Forest Service in a way that harms his recreational interests, and that he would have commented on the project but for the regulation." *Id.* at 495–96.

Here, the risk that Plaintiffs will be transferred to Guantánamo is but one step away, and entirely within the control of Defendants, who have acted consistently with Plaintiffs' alleged future injury against people just like them. Plaintiffs' standing thus "requires only [a] single

inference" that is "eminently reasonable," based on the government's own words and actions. *N.Y. Rep. State Comm'n. v. SEC*, 927 F.3d 499, 505 (D.C. Cir. 2019). That it is not certain that the action will occur is no more determinative than it was in *N.Y. Rep. State Comm'n*, where a member of the plaintiff organization had standing to challenge an SEC rule barring certain solicitations because it was likely "at least one of" the contacts "would have donated a few dollars" to the organization had the member requested it, even in the absence of any evidence of past donations by them. *Id.*

Most of Defendants' standing argument boils down to the suggestion that Plaintiffs' identified risk factors are not reliable predictors, especially given that since the filing of this suit, the government has begun obscuring the prevailing pattern by transferring individuals from multiple nationalities to Guantánamo. Opp. 12. But it remains true that, like the ten Plaintiffs, all but one of the known transfers have involved men with final removal orders, *see infra* n.12, and standing requirement does not require a showing of "literal certainty." *N.Y. Rep. State Comm'n.*, 927 F.3d at 504. Plaintiffs' argument is that each factor increases the risk of transfer, and that the combination that applies to each Plaintiff establish a substantial risk for each. The fact that a Plaintiff is a post-final order Venezuelan, for instance, is meaningful because, as even Defendants concede, the "majority" of prior transferees—and the vast majority of transferees before the start of this litigation—were Venezuelan. Opp. 10. The same is true of the Plaintiffs accused of gang affiliations in connection with their tattoos. Courts have rejected, time and again, the argument that a defendant's past behavior is irrelevant to a showing of future injury. "Of course, past wrongs are evidence bearing on" the risk that a plaintiff will be harmed again. *Swanson Group Mfg. v. Jewell*, 790 F.3d 235, 242 (D.C. Cir. 2015) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Moreover, the government has repeatedly stated plans to populate Guantánamo with up to 30,000 detainees, making the risk that much greater. *See* Suppl. Decl. of Deborah Fleischaker, ¶ 31.

The substantial likelihood of transfer to Guantánamo is even higher than that of noncitizens held to have standing in a recent immigration case in this District. In *Make the Road New York v. McAleenan*, the plaintiffs challenged a rule making undocumented noncitizens eligible for expedited removal based solely on being in the country for less than two years. 405 F. Supp. 3d 1, 9 (D.D.C. 2019), *rev'd on other grounds*, 962 F.3d 612 (D.C. Cir. 2020). Then-Judge Jackson found standing, explaining that at least one member of the organizational plaintiff "*could be* placed in expedited removal" as a result of the rule. *Id.* at 33 (emphasis added). The court did so even though, at the time the suit was filed, the government had not placed *any* noncitizen into expedited removal based on the rule. *Id.* Because the rule made plaintiffs in a particular category *eligible* for targeting, and DHS officials had made clear they intended to use the new rule going forward, the plaintiffs had standing—even though, like here, the government represented that any individual enforcement was not imminent. *Id.* In rejecting similar arguments to those the government makes here, the court explained that the government "cannot expect to have its cake (by purposefully threatening to subject settled undocumented non-citizens to expedited removal in a manner that elicits widespread fear) without eating it, when representatives of the targeted individuals seek access to the courts on the grounds that their members" face the substantial prospect of future harm. *Id.* at 34. As in *Make the Road*, the government's position is "illogical," *id.*, because it maintains plans to expand the population of detainees at Guantánamo "but nevertheless claim[s] that individuals" most like those already subject to transfers there "are not at risk." *Id.*

Finally, the government invokes the "sheer number of detainees who have been repatriated . . . without transiting through" Guantánamo. Opp. 10. But whatever their doubtful relevance, the government's figures are badly inflated. While the government tries to compare the 290 individuals transferred to Guantánamo in the first month against "47,490 to 74,360 monthly

repatriations," *id.*, the relevant denominator is closer to 4,000 removals (by ICE, not all of DHS) per month, or even fewer considering Defendants' focus on men with final orders, and their transit through El Paso, Texas. Fleischaker Suppl. Decl. ¶¶ 27–30. And the government has stated that its Guantánamo transfers are just getting started. Mot. 9. In *Make the Road*, the number of noncitizens potentially subject to the government's policy—the "reference group," as the government calls it here, Opp. 10—was in the millions, and it had never been enforced against anyone at all prior to the suit. *See* 405 F. Supp. 3d at 17, 33–34. Here, at the time Plaintiffs filed their complaint, the government's transfer policy had been deployed almost exclusively against people just like them.[4] *See* Compl. ¶¶ 52, 55. This is an even stronger case for standing than *Make the Road*.

## II.    Plaintiffs' APA Claim Is Cognizable.

Defendants contend that Plaintiffs' APA claim should be dismissed. As an initial matter, even if Plaintiffs' APA claim were not cognizable, Plaintiffs' statutory and constitutional claims would still be cognizable because they do not depend on the APA for a cause of action. *See, e.g.*, *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015). In any event, Defendants are incorrect that Plaintiffs' APA claim is not cognizable. Plaintiffs challenge a particular and final agency action—the government's establishment of a policy and practice of transfer to and detention at Guantánamo—and are not raising wholesale programmatic challenges to all transfers.

Defendants allege that Plaintiffs are seeking "wholesale improvement" of the government's "removal operations," and that this is not a "discrete, identifiable 'agency action' subject to challenge" under the APA. Opp. 16. But this "confuse[s] aggregation of similar, discrete purported

---

[4] The government characterizes some of Plaintiffs' allegations about their transfers as "rumors" and "hearsay," Opp. 11-12, 14, but Defendants acknowledge that hearsay is admissible for the purposes of a preliminary injunction motion, Opp. 37 n.8, and Plaintiffs' accounts are credible because they are consistent with each other, and with the pattern of government transfers so far. *Compare* ECF No. 2-7, Berrios Laguna Decl. ¶ 4, *with* ECF No. 2-9, Torcati Sebrian Decl. ¶ 5.

injuries—claims that many people were injured in similar ways by the same type of agency action—for a broad programmatic attack." *Ramirez v. U.S. Immigr. & Customs Enf't*, 310 F. Supp. 3d 7, 21 (D.D.C. 2018) (policy of placing youth in adult detention facilities without considering statutorily mandated factors was subject to APA review). Plaintiffs do not lodge a generalized complaint against all aspects of ICE's removal and detention operations. Rather, they "attack *particularized* agency action"—namely, transfer to and detention at Guantánamo. *R.I.L-R v. Johnson*, 80 F. Supp. 3d 164, 184 (D.D.C. 2015) (unwritten ICE policy of "considering certain factors in individualized custody determinations" subject to APA review). Far from seeking "programmatic improvements," Opp. 16, Plaintiffs allege that a particular policy, transfer to Guantánamo, is unlawful. *Ramirez*, 310 F. Supp. 3d at 21. Nor are Defendants' actions immune from APA review just because they may implicate foreign relations and political considerations. Opp. 16–17. Courts routinely review immigration policies that implicate removal. *See, e.g.*, *Dep't of Homeland Sec. v. Regents of the Univ. of Calif.*, 591 U.S. 1, 18–19 (2020) (reviewing rescission of deferred action program); *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 35–36 (D.D.C. 2020) (reviewing expedited removal and related detention policy under the APA).

Defendants also incorrectly contend that Plaintiffs cannot challenge the "individual determinations" to transfer them to Guantánamo because they "do not trigger the legal consequences of the removal efforts nor mark the consummation of the removal process." Opp. 17 (internal quotation marks omitted). Again, this misunderstands the claim. Plaintiffs do not challenge Defendants' decision to remove them to their home country or another statutorily designated country—rather, they challenge their potential transfer to Guantánamo. And this decision to transfer *does* trigger legal consequences because it is prohibited by the INA, APA, and due process. Whether transfer to Guantánamo marks the consummation of the removal process or

serves as a "temporary staging point en route to . . . removal" is irrelevant to the Court's inquiry under the APA. Opp. 17. What matters is that Defendants have taken "specific, discrete steps" to effectuate transfers to Guantánamo, and these actions have "actual or immediately threatened effects." *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 139 (D.D.C. 2018) (unwritten policy requiring "consideration of deterrence in making . . . individual parole decisions" was final agency action).

Defendants further allege that Plaintiffs cannot challenge the punitive conditions at Guantánamo or "implementation steps" taken after the Memorandum was issued due to lack of final agency action. Opp. 18. But courts routinely review agency implementation of presidential directives. *See, e.g.*, *Gomez v. Trump*, 485 F. Supp. 3d 145, 194 (D.D.C. 2020) (finding agency policy arbitrary and capricious where it was not "compelled by the [presidential] Proclamations"); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 110, 112 (D.D.C. 2020) (reviewing agency action "effectuat[ing] an executive order"); *see also R.I.L-R*, 80 F. Supp. 3d at 184; *Ramirez*, 310 F. Sup at 20–23; *cf. Vetcher v. Sessions*, 316 F. Supp. 3d 70, 79 (D.D.C. 2018) (cited by Defendants) (finding no final agency action because plaintiff made only generalized allegations challenging detention and "fail[ed] to identify" which policies he was challenging).

## III.    The Court Has Jurisdiction Over Plaintiffs' Claims.

Defendants are wrong that transfer decisions are "committed to agency discretion by law" under the APA, 5 U.S.C. § 701(a)(2), and wrong that the INA divests the Court of jurisdiction to review Plaintiffs' claims, *id*. § 701(a)(1).

First, § 701(a)(2)'s exception to the general presumption in favor of judicial review applies only in the "rare circumstances where the relevant statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Dep't of Commerce v. New York*, 588 U.S. 752, 754, 772 (2019) (court could review decision to reinstate

citizenship question on census because "this is not a case in which there is 'no law to apply'") (citations omitted). Defendants have not met their "heavy burden" to rebut the presumption of reviewability. *Ramirez*, 338 F. Supp. at 37 (citation omitted). Here, there is plainly law to apply to decide if the INA permits these transfers under basic principles of statutory construction, whether the transfers violate Constitution, and whether the agency action is arbitrary. *Compare Webster v. Doe*, 486 U.S. 592, 600 (1988) (no law to apply in reviewing termination where statute provided for CIA terminations when "deem[ed] . . . necessary or advisable in the interests of the United States"), *with* Mot. 14–34. Defendants point to 8 U.S.C. § 1231(g) to suggest its text commits transfer decisions to the agency's unreviewable discretion. Opp. 19–20. But Plaintiffs are not bringing a run-of-the-mill challenge to whether one U.S. facility is more appropriate than another. Moreover, § 1231(g) does not even mention transfers, *see infra* at pp. 12, and even if did apply to transfers, nothing in its language signals a grant of unreviewable discretion to qualify as one of the "rare circumstances" in which there is no law to apply. *Dep't of Commerce,* 588 U.S. at 772.

Finally, insofar as Defendants suggest that the Court lacks jurisdiction under § 701(a)(2) because the executive has "broad discretion" over immigration, Opp. 18, that argument proves too much, as courts regularly subject immigration decisions to APA review. *See, e.g., Regents*, 591 U.S. at 1906 (recission of DACA); *Judulang v. Holder*, 565 U.S. 42, 52–53 (2011) (discretionary relief); *Grace v. Barr*, 965 F.3d 883, 893–94 (D.C. Cir. 2020) (standards in asylum proceedings).

Second, neither of the two INA jurisdictional provisions on which the government relies, 8 U.S.C. §§ 1252(g) and 1252(a)(2)(B)(ii), divests this Court of review over Plaintiffs non-discretionary statutory, constitutional, or APA claims.

Section 1252(g) does not bar review, for three reasons. First, transfers are not among the actions to which § 1252(g) applies. The statute "applies only to three discrete actions that the

Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrim. Comm. (AADC)*, 525 U.S. 471, 482 (1999). While "[t]here are of course many other decisions or actions that may be part of the deportation process"—like detention or transferring detainees—"[i]t is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*; *see also Regents*, 591 U.S. at 19 (§ 1252(g) did not cover agency's rescission of DACA, even though policy provided for deferral of removal for beneficiaries); *Jama v. I.N.S.*, 329 F.3d 630, 632 (8th Cir. 2003), *aff'd*, 543 U.S. 335 (2005) (concluding that petitioner's "question is simply outside the scope of the jurisdiction-stripping provision of § 1252(g)" where the court is "address[ing] a purely legal question of statutory construction" regarding whether removal was to a statutorily authorized country under § 1231); *D.A.M. v. Barr*, 474 F. Supp. 3d 45, 60 (D.D.C. 2020) (distinguishing the "discretionary decision to execute [] removal orders," which is covered by § 1252(g), and a challenge to the "physical manner of [] deportation," which is not); *Zhang v. Napolitano*, 604 F. Supp. 2d 77, 80 (D.D.C. 2009) (suit to expedite asylum application "does not purport to seek review of one of the Attorney General's discrete removal-related decisions listed in § 1252(g)").[5] Transfers are not addressed by § 1252(g), and it does not bar jurisdiction.

Second, Plaintiffs are bringing statutory and constitutional challenges to *nondiscretionary* actions. Section 1252(g) applies only to "discretionary determinations." *AADC*, 525 U.S. at 485; *see also id.* at 485 n.9, 486, 487. Because § 1252(g) addresses decisions where the action is within the government's discretion to make, it does not reach claims that challenge the authority to take

---

[5] Defendants' cases do not compel a different result: *Guangzu Zheng v. Decker*, did not address § 1252(g) nor *AADC*, 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014); and, *Jacquet v. Hodgson*, provided no analysis, let alone address *AADC*. 2003 WL 22290360 (D. Mass. Oct. 6, 2003).

the action in the first instance, such as whether the INA and due process permit these extraterritorial transfers or whether the agency has acted arbitrarily. Defendants do not have discretion to violate legal limits. *See, e.g.*, *Bowrin v. U.S. I.N.S.*, 194 F.3d 483, 488 (4th Cir. 1999) ("§ 1252(g) does not apply to agency interpretations of statutes as these decisions do not fall into any of the three categories enumerated"); *Madu v. U.S. Atty. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (§ 1252(g) "does not proscribe substantive review of the underlying legal bases for those discretionary decisions and actions"); *Garcia v. Att'y Gen.*, 553 F.3d 724, 729 (3d Cir. 2009) (challenge to "very authority" behind decision to commence proceedings does "not implicate[]" § 1252(g)); *Arce v. U.S.*, 899 F.3d 796, 801 (9th Cir. 2019) (similar); *see also A.M.P.V. by & through next friend Aguayo v. Barr*, 2020 WL 2079433, at *6 (D.D.C. Apr. 30, 2020) (§ 1252(g) applied because "Plaintiff does not challenge the constitutionality or lawfulness of" removal process).

Third, § 1252(g) is not a wholesale bar on judicial review, but a channeling provision designed to "mak[e] it clear that [the] specified decisions and actions . . . *are* covered by the 'zipper' clause" of the companion provision, § 1252(b)(9). *AADC*, 525 U.S. at 483. Section 1252(g), accordingly, states that any limits it imposes are "[e]xcept as provided in this section." *Id*. But § 1252(b)(9) itself does not apply to Plaintiffs' claims.[6]

---

[6] Section 1252(b)(9) is a channeling provision that funnels challenges to removal orders to the courts of appeals by a petition for review. But it does not preclude district court review where a claim cannot meaningfully be brought through the petition-for-review process. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 293-94 (2018) (rejecting government's expansive interpretation of § 1252(b)(9) and affirming district court jurisdiction over a challenge to immigration detention because it could not be brought by petition for review); *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) (§ 1252(b)(9) does not "strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal"). Here, Plaintiffs do not challenge their final orders of removal to their home country or any other statutorily authorized country, but only whether they can be sent to Guantánamo, a claim that arose after their removal proceedings concluded. *See Jama*, 329 F.3d 630 (permitting district court to consider whether Somalia was proper removal destination); *see also Zadvydas v. Davis*, 533 U.S.

Lastly, Section 1252(a)(2)(B)(ii) likewise does not bar review here. That provision precludes review of "any [] decision or action of the Attorney General . . . the authority for which is *specified* under this subchapter to be in the *discretion* of the Attorney General. . . ." 8 U.S.C. § 1252(a)(2)(B)(ii) (emphases added). But as the Supreme Court established in *Kucana v. Holder*, § 1252(a)(2)(B)(ii) applies only to those decisions where Congress has "set out the Attorney General's discretionary authority in the statute." 558 U.S. 233, 247 (2010). Defendants point to § 1231(g) as supplying the authority to transfer, but that provision merely states that DHS "shall arrange for appropriate places of detention for [noncitizens] detained pending removal or a decision on removal" and "may expend from [enumerated appropriations] amounts necessary to . . . operate facilities . . . necessary for detention." *Id*. § 1231(g)(1). That statute nowhere even mentions or authorizes "transfer." *See id*.

Consequently, "there is considerable uncertainty as to whether § 1231(g)(1) encompasses the authority to transfer detainees." *Aguilar v. U.S. Immigr. & Customs Enf't*, 510 F.3d 1, 20 (1st Cir. 2007). But even if it *implicitly* authorizes transfers, § 1231(g) certainly does not *specify* that the power to transfer is discretionary, as required under *Kucana*. *See Reyna ex rel. J.F.G. v. Hott*, 921 F.3d 204, 209–10 (4th Cir. 2019) (relying on *Kucana* to hold that § 1252(a)(2)(B)(ii) does not bar review of transfer decisions); *Aguilar*, 510 F.3d at 20 (reaching same conclusion pre-*Kucana*, noting "stark contrast" between § 1231(g) and other provisions of the INA that clearly specify a particular authority as discretionary); *see also Fogo De Chao (Holdings) Inc. v. DHS*, 769 F.3d 1127, 1138 (D.C. Cir. 2014) (§ 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely

---

678, 688 (2001) (jurisdictional bars of INA did not apply where petitioners "challenge the extent of the Attorney General's authority under the post-removal-period detention statute").

assumed or contemplated—to be in the Attorney General's discretion," and "'[s]pecified' is not synonymous with 'implied' or 'anticipated'" (quoting *Kucana*, 558 U.S. at 243 n.10)).[7]

The discretionary bar also does not apply because Plaintiffs "do not seek review of the Attorney General's exercise of discretion." *Zadvydas*, 533 U.S. at 688. They are challenging the legal extent of the government's authority, and "the extent of that authority is not a matter of discretion" and thus, not subject to § 1252(a)(2)(B)(ii). *Id.* (finding jurisdiction over challenge to statute explicitly providing that the Attorney General "may" detain noncitizens after a final order of removal is entered). Indeed, in *Damus v. Neilsen*, a court in this District rejected application of § 1252(a)(2)(B)(ii) where "petitioners were not in fact challenging [the] decisionmaking" "to detain a noncitizen" but rather raised legal challenges to the extent of that authority. 313 F. Supp. 3d 317, 327 (D.D.C. 2018). In sum, nothing precludes the Court's review of Plaintiffs' claims.

## IV.    This District Is the Proper Venue for Plaintiffs' Claims.

Venue is proper here given that Defendants reside in this District and the substantial part of the events giving rise to that claim occurred in this District. *See* 28 U.S.C. §§ 1391(b)(1), (b)(2); *see also Poullard v. Fed. Bureau of Prisons*, 535 F. Supp. 2d 146, 147, 149 (D.D.C. 2008). Defendants thus do not dispute that this District is a proper venue if Plaintiffs' APA or inherent equitable power claims survive; they argue only that the habeas claims must be transferred to the

---

[7] Defendants' cases do not support a contrary result. *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, did not address jurisdiction, let alone § 1252(a)(2)(B)(ii). 44 F.3d 1251 (4th Cir. 1995). Moreover, the Fourth Circuit's later case *Reyna*, which did apply *Kucana* and found transfers not subject to § 1252(a)(2)(B)(ii), did not confirm *Gandarillas-Zabrana*'s threshold conclusion about transfer authority. *See Reyna*, 921 F.3d at 210 (noting only that previous case "*might* rightfully locate government authority to transfer" in § 1231(g) (emphasis added)). *Wood v. United States* assumed jurisdiction and rejected plaintiffs' claim on the merits. 175 F. App'x 419, 420 (2d Cir. 2006); *see also Edison C. F. v. Decker*, 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) ("This Court need not reach the ultimate question of jurisdiction here[.]"). *Van Dinh v. Reno* predates *Kucana*, and its failure to identify any discretion specified by statute is flatly inconsistent with the Supreme Court's holding. 197 F.3d 427 (10th Cir. 1999).

district of confinement if the other claims are dismissed. Opp. 23. As explained, Plaintiffs' APA and equitable claims are cognizable. In any event, habeas is also proper in this District because Plaintiffs are not challenging the *fact* of their *current* detention but rather their transfers to, and conditions of detention at, Guantánamo. Compl. ¶¶ 1–2. As such, the habeas immediate custodian rule does not control, and Defendants' cases, Opp. 24, are inapposite because those cases challenged the bases for their detention. *See Aracely, R.*, 319 F. Supp. 3d at 126 (plaintiffs could challenge nationwide immigration policy in this District because it did not present a "core habeas petition" that "'necessarily impl[ied] the invalidity of confinement or shorten its duration'").

## V.    Plaintiffs Are Likely to Succeed on the Merits.

### A.  Transferring Individuals from the U.S. to Guantánamo Violates the INA.

Defendants contend that they are not removing individuals to Guantánamo but only detaining them there. Defendants are wrong that the INA authorizes extraterritorial detention. They are also wrong that the transfer of detainees to Guantánamo does not constitute unlawful removal.

#### 1.   *The INA Does Not Authorize Extraterritorial Immigration Detention*

Defendants do not dispute that Guantánamo is outside the United States. *See* Mot. 13. Nor do Defendants dispute that the presumption against extraterritorial application of federal statutes applies to the INA. Defendants thus bear the burden of demonstrating that Congress clearly expressed such intent. *See RJR Nabisco v. Eur. Cmty.*, 579 U.S. 325, 337 (2016) (question is "whether the presumption against extraterritoriality has been rebutted—that is, whether the statute gives a clear, affirmative indication that it applies extraterritorially."). Their attempts to do so fail.

For years, the government itself has consistently argued that the INA and other federal statutes do not apply at Guantánamo. *See, e.g.*, Br. of Pet. at *11, *McNary v. Haitian Ctrs. Council, Inc.*, No. 92-344, 1992 WL 541276 (U.S. 1992) (arguing that presumption against extraterritorial

application of federal statutes meant that the INA's withholding of removal provision did not apply on Guantánamo "because there is no clear expression of congressional intent"); *see also* Br. for Resp. at *19, *Rasul v. Bush*, Nos. 03-334 & 03-343, 2004 WL 425739 (U.S. Mar. 3, 2004); *Al Janko v. Gates*, 831 F. Supp. 2d 272, 284 (D.D.C. 2011), *aff'd*, 741 F.3d 136 (D.C. Cir. 2014) (finding that FTCA does not apply on Guantánamo). Now, in an about-face, Defendants insist that the INA provisions that authorize immigration detention apply extraterritorially—not just to Guantánamo, but conceivably to all of the government's "diplomatic missions" and "military bases" abroad. Opp. 26 (citation and quotation marks omitted).

The government's new arguments find no support in the text and structure of the INA— and certainly no clear enough evidence to displace the longstanding presumption against extraterritoriality. Moreover, the governments' arguments are in stark contrast to their past practice: During the more than 75 years that the INA has authorized immigration detention, Defendants have *never* claimed to be exercising its immigration detention extraterritorially, i.e., by holding people in immigration detention facilities outside the United States. *See* Fleischaker Suppl. Decl. ¶¶ 6, 19. That is reason enough for serious skepticism of the government's newly offered interpretation of the INA. When an agency claims to discover "an unheralded power" in "a long-extant statute," courts "greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014); *see also Biden v. Nebraska*, 143 S. Ct. 2355, 2358 (2023) (rejecting "the Secretary's invocation of the waiver power" where it "does not remotely resemble how it has been used on prior occasions").

The government's contention that it has broad authority to detain pending removal and to arrange places of detention is beside the point. None of the statutes on which the government relies says anything about extraterritorial detention. Nor is the government correct that because the INA

authorizes detention at "United States Government facilities," it necessarily authorizes detention at Guantánamo. Opp. 25 (quoting 8 U.S.C. § 1231(g)). Nothing in the statute indicates that the term "United States Government facilities" includes sites abroad. *See Garvey v. Admin. Rev. Bd.*, 56 F.4th 110, 122 (D.C. Cir. 2022) (the presumption against extraterritorial application of statutes "is rebutted only when the statute's text, history, or purposes . . . evince a clear indication of extraterritorial reach") (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 109 (2013)).[8]

Defendants also attempt to justify detention at Guantánamo by conflating the authority to detain with the authority to remove, arguing that because the latter involves "inherently extraterritorial missions," so must the former. Opp. 27–28. But as explained by former ICE Acting Director, Deborah Fleischaker, detention and removal have long been understood as distinct operations. *See* Fleischaker Suppl. Decl. ¶ 8. Detention is authorized while arrangements are being made to remove. *Id.* ¶ 10. The detention process *ends* when removal *begins*. *Id.* ¶¶ 6, 13. Once the government initiates the removal process by putting detainees on flights to their removal destinations, the agency is no longer engaged in "detaining" them but "removing" them. *Id.* ¶¶ 10, 14. Defendants nowhere claim that when migrants are sent to Guantánamo, there is the required manifest for their removal to another country or even that travel documents have been secured for their lawful removal—or any of the other agency requirements for a lawful removal. *Id.* ¶¶ 10, 12.

Similarly, the government cannot plausibly equate detention at Guantánamo with the kind of "stopovers" that occur in the process of effectuating removal orders, like refueling stops. Opp. 27. As Fleischaker explains, "stopovers" are a temporary, time-limited, and scheduled part of a removal process in which travel arrangements have already been made to an individual's

---

[8] The government's reliance on *United States v. Al-Iman*, 373 F. Supp. 3d 247 (D.D.C. 2019), is misplaced. Opp. 26. There, the court examined the presumption under an entirely different (criminal) statute. *Id.* at 264.

destination. Fleischaker Suppl. Decl. ¶ 16 (discussing why government's layover analogy is inapt). In contrast, detention at Guantánamo is not a stage in the removal process. It is either an improper removal itself, *see infra* Section V.A.2, or detention pending removal, *i.e.*, detention for the purpose of making the travel arrangements necessary for removal at some later date. *See* ECF No. 14-2, Decl. of Juan Lopez-Vega, ¶ 6; Fleischaker Suppl. Decl. ¶ 12. Defendants thus fall far short of making the showing necessary to support extraterritorial application of the INA's detention authority.

### 2. *Transfer of Detainees to Guantánamo Constitute Unlawful Removals*

The challenged transfers are no more lawful if viewed as removals rather than detentions. Under the INA and longstanding case law, transferring an immigration detainee outside the country constitutes a removal. Because the government has not complied with the statutory requirements for carrying out removals to Guantánamo, these removals are unlawful. Mot. 14–16.

Defendants argue that migrants transferred to Guantánamo have not been removed to Cuba because the United States exercises complete control there and over the detainees, who remain in U.S. custody and outside the control of Cuba. Opp. 28–29. But that is not the criteria in the INA, which deems any individual to have been removed if they have "left the United States[.]" 8 U.S.C. § 1101(g). Defendants point to no language in the statute conditioning removal on either the receiving country assuming control of the individual or the U.S. government relinquishing custody. Nor do they cite any case law supporting this position. In fact, the case law and practice support the opposite. *See, e.g.*, *Nicusor-Remus v. Sessions*, 902 F.3d 895, 899–900 (9th Cir. 2018) (holding that removal order was executed where noncitizen was escorted by ICE agents across the border into Mexico and then escorted back into the United States to testify at trial, and hence was in U.S. custody at all times); *Aguilera-Ruiz v. Ashcroft*, 348 F.3d 835, 836 (9th Cir. 2003) (brief departure

17

to Tijuana executed removal order, even though noncitizen had no intention to do so); Fleischaker

Suppl Decl. ¶ 17 ("removals do not require acceptance by the receiving country").

Defendants' related argument that § 1101(g) requires a "legal departure" from the United

States, not merely a "physical departure," fails for similar reasons. Opp. 29–30. Defendants claim

that to effectuate a removal an individual must "lawfully enter" another country. *Id*. Again, nothing

in the text of § 1101(g) contains these requirements, nor does the case law. *See, e.g.*, *Nicusor-*

*Remus*, 902 F.3d at 899–900 (rejecting distinction between a physical and legal departure, because

"all the statute requires to execute the removal order is for the alien to 'le[ave] the United States'").

*Handa v. Crawford*, on which Defendants focus, is inapposite. 312 F. Supp. 2d 1367 (W.D.

Wash. 2004), *aff'd*, 401 F.3d 1129 (9th Cir. 2005). As the Ninth Circuit later explained:

> *Handa* applie[d] to a **unique** set of facts. The alien in *Handa* never "left the United
> States" because (1) he was denied admission to Canada, (2) withdrew his request for
> admission, and (3) immediately returned to the United States. By way of analogy, an
> individual who steps onto the doorstep but finds that the front door is locked has not
> left the outdoors. ***Aguilera-Ruiz* is the rule; *Handa* is the exception**.

*Nicusor-Remus*, 902 F.3d at 899–900 (emphasis added).[9]

Moreover, the government's position is inconsistent with ICE's policy and practice. As

stated in a July 2004 Notice of Proposed Rulemaking, "[t]he role of ICE officers . . . is not to obtain

the acceptance of the country of removal but to ensure that the removal order has been carried out

through witnessing the alien's crossing of a border, the alien's departure on a commercial or charter

carrier, or the alien's passage into or through a transiting country on to his or her final destination.

ICE officers are utilized to ensure that aliens being removed are placed at a point of no return to

the United States." "Execution of Removal Orders: Countries to Which Aliens May Be Removed,"

---

[9] To bolster their position that an individual must make a "legal entry," Defendants cite to cases
that treat an individual who made a physical entry as at the "threshold of entry," Opp. 30, but those
cases concerned the due process rights that go with entry and have no applicability here.

69 Fed. Reg. 42,901, 42,904 (July 15, 2004); *see also* Fleischaker Suppl. Decl. ¶ 17. This policy and practice holds true today and, in all those scenarios, the removal is effectuated by the individual's physical departure from the United States, regardless of any "legal entry." *Id*.

Finally, in contending that the term "removal" has a broader meaning—specifically (according to Defendants) a "multi-step process" of which Guantánamo detention is merely one step akin to a layover, en route to their final destinations, Opp. 29—Defendants ignore the government's practice and (most important) the statutory language of § 1101(g) discussed above.

In short, the transfer of detainees to Guantánamo constitutes an unlawful removal. But even if it does not, it still violates the INA as extraterritorial detention.

## B. Defendants' Implementation of President Trump's Memorandum Is Arbitrary and Capricious

Defendants notably do not contest that their actions are inconsistent with the text of the Memorandum, by detaining migrants on the military side at Camp 6 (rather than at the MOC) and by detaining migrants who are not "high-priority criminal aliens." Mot. 18. Defendants argue that they have independent statutory authority for these transfers. Opp. 31–32 That is incorrect for the reasons explained above. But for the purpose of Plaintiffs' APA claim, the relevant point is that the agencies cannot justify their actions by reference to the President's Memorandum.

Defendants also concede that they started moving people to Guantánamo while operating procedures were still being updated, and contend that "moving too quickly" should not be held against them. Opp. 32. But Plaintiffs take issue not with the speed with which Defendants transferred detainees, but with their failure to establish the requisite counsel access and detention protocols before starting the process (in addition to continual issues on these fronts)—especially because the President's Memorandum did not state that the agencies should begin the transfers,

but only that the agencies should begin to "take all appropriate actions to expand" the MOC. Mot. 19–20 (quoting Guantánamo Memorandum). For this, Defendants have no response.

Defendants also provide no justification for their failure to engage in reasoned decisionmaking. Opp. 32. In particular, Defendants do not dispute that it is far more costly and operationally more complicated to hold detainees at Guantánamo. Nor do they claim that it makes sense from a logistical standpoint. In fact, it appears the government is not able to remove migrants from Guantánamo directly to their countries. As a result, they are sending detainees to Guantánamo and then sending them *back to the United States* for removal to another country, making the whole enterprise illogical unless for show. Fleischaker Suppl. Decl. ¶¶ 24–26 (discussing costly waste).

The only explanation that Defendants can muster to justify transfers to Guantánamo is a claim of limited detention capacity in the United States. Opp. 32–33. But the government cannot seriously claim that a lack of U.S. detention capacity has dictated the transfers. *See* Fleischaker Suppl. Decl. ¶ 4 (government has not explained why ICE is unable to use existing detention capacity within the U.S.); *see Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) ("The agency must explain the evidence which is available, and must offer a 'rational connection between the facts found and the choice made.'" (citation omitted)); *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 2025 WL 485324, at \*5 (D.D.C. Feb. 13, 2025) (agency action implementing Executive Order was arbitrary and capricious where it failed to offer a "rational connection between the facts found and the choice made"). In short, the government is acting arbitrarily and failing to justify its actions. It has therefore violated the APA.

### C. Transfer To, And Detention In, Guantánamo Will Violate Plaintiffs' Substantive Due Process Rights.

Defendants do not dispute that the government may not subject people held in *civil immigration* detention to punishment, *see Block v. Rutherford*, 468 U.S. 576, 583 (1984); *C.G.B.*

*v. Wolf*, 464 F. Supp. 3d 174, 210 (D.D.C. 2020), and that civil detention must be "rationally related to a legitimate nonpunitive purpose," and not "excessive" in relation to its goals, *Bell v. Wolfish*, 441 U.S. 520, 561 (1979). Nor does the government dispute that when the conditions in civil detention are equivalent to or more restrictive than detention in criminal custody, they are presumptively unconstitutional and the burden switches to the government to justify the detention. *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.* (*AIJ*), 2023 WL 1438376, at *11– 12 (D.D.C. Feb. 1, 2023) (collecting cases).

Defendants instead argue that the court should grant them great latitude in their choice to detain people at "a particular facility." Opp. 33. But the executive's immigration power "is subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. Nor is Guantánamo just *any* particular facility. Plaintiffs do not dispute the Defendants' general authority to detain noncitizens prior to deportation. Rather, Plaintiffs specifically challenge the government's extraordinary and unprecedented detention of immigrants at Guantánamo for indisputably punitive purposes.

Defendants admit that they have chosen, at least in part, to hold civil immigration detainees at Guantánamo for the illegitimate purpose of deterrence. Opp. 35. But general deterrence is not a legitimate purpose in the civil context. *Bell*, 441 U.S. at 539 n.20 ("Retribution and deterrence are not legitimate nonpunitive governmental objectives."); *R.I.L.-R*, 80 F. Supp.3d at 188–89; *see also Kansas v. Crane*, 534 U.S. 407, 412 (2002); *Jacinto-Castanon de Nolasco v. U.S.I.C.E.*, 319 F. Supp. 3d 491, 502 (D.D.C. 2018).[10]

---

[10] The government's only response to the line of cases about deterrence as an impermissible purpose is to point generally to its broad power over immigration. Opp. 33. But those considerations were present in all those cases. Mot. 27; *see also Wong Wing v. United States*, 163 U.S. 228, 237 (1896).

And while Defendants only go so far as conceding that deterrence is one of their purposes in sending migrants to Guantánamo, it is plain it is their sole purpose given that the other rationale they cite, detention capacity, does not hold up to even barebones scrutiny. Indeed, the President, DHS Secretary, and Secretary of Defense have all made clear public statements declaring their intent to deter and punish by detaining immigrants at Guantánamo. Mot. 24–26. Defendants' citation to a lower-level official's conclusory assertion detaining immigrants at Guantánamo is generally "related to [their] efforts to effect a removal mission," Opp. 34, is unpersuasive.

Defendants fall back on the argument that they need not fully justify their use of Guantánamo because of deference allowed to prison administrators. Opp. 34. Immigration detention, of course, is not a prison, and detainees' due process protections are greater than those for people convicted of crimes. *See C.G.B.*, 464 F. Supp. 3d at 210. Even where the government has an "interest in punishment, deterrence, and rehabilitation," "[c]ourts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Brown v. Plata*, 563 U.S. 493, 511 (2011) (cleaned up).

Not only has the government failed to present any legitimate justification for holding immigrant detainees at Guantánamo; it also holds these immigrant detainees in conditions that are "unreasonable or excessive relative to the Government's proffered justification." *AIJ*, 2023 WL 1438376, at *11. The parties agree on the legal test. Mot. 21; Opp. 36–37. Defendants take issue only with the "prospective" nature of Plaintiffs' claim. Opp. 37. But even the Eighth Amendment protects both against present harm and a "sufficiently imminent danger" of "future harm to [detainees]." *Helling v. McKinney*, 509 U.S. 25, 34 (1993). Plaintiffs face a sufficiently imminent risk of transfer, as discussed above. *Supra* Section I. The injunctive relief Plaintiffs seek is

therefore appropriate. *See, e.g.*, *Hernandez Roman v. Wolf*, 2020 WL 5797918, at *6 (C.D. Cal. Sept. 29, 2020) (ordering that the government may not "transfer detainees into [an ICE] facility").

Although Defendants dispute—or claim to have improved—some conditions Plaintiffs cited in their opening brief, the undisputed facts alone justify a finding of punitive conditions. Defendants' own admissions confirm that they allow officers to use a restraint chair for discipline, that all people detained in Camp 6 are held in conditions of solitary confinement, and that these conditions have caused self-harm, including attempts at suicide. Green Decl. ¶¶ 4, 6, 9 & n.1, 10–11, 13–16, 23–24; Mot. 8. Defendants do not address the instances of staff misconduct, including physical assaults and arbitrary use of force, corroborated by multiple declarations in the record. Mot. 4–5.[11] And Defendants do not dispute that these conditions mirror those of a maximum-security prison. *Wilkinson v. Austin*, 545 U.S. 209, 214 (2005). In contrast, detainees do not face such restrictive conditions in U.S. detention facilities. Fleischaker Suppl. Decl. ¶¶ 32–37.

Reports from detainees also continue to undermine Defendants' representations of conditions at Guantánamo. For instance, detainees confirm they have never received information on their right to contact counsel. *See* Decl. of Tarlis Marcone De Barros Goncalves, ¶ 14;[12] Decl. of Engel Jirox Montenegro Olivas, ¶ 8; *see also* Suppl. Decl. of Jennifer Babaie, ¶ 13. And while the government notes the ABA hotline as a resource for unrepresented detainees, the ABA has not received any calls from detainees at Guantánamo. *See* Decl. of Adonia Simpson, ¶¶ 4–5. Although

---

[11] Defendants contend that their own declarations are "the best evidence" because Plaintiffs' declarations are hearsay, Opp. 37 n.8, but that is wrong on two fronts. Both submitted declarations by out-of-court witnesses. Plaintiffs' declarations are fully supported by personal knowledge; Defendants' are not. *E.g.*, Lopez-Vega Decl. ¶ 2 (relying on "information obtained from . . . other DHS employees"). And, as Defendants acknowledge, "the Court may consider inadmissible evidence for the purposes of deciding a preliminary injunction motion." Opp. 37 n.8.

[12] The government has transferred a trans woman to Guantánamo, housing her with men and subjecting her to searches by male guards. De Barros Goncalves Decl. ¶¶ 9, 15.

Defendants have now allowed detainees to place one 5-minute call each day to a family member, that is much more restrictive than the conditions in the U.S., *see* Fleischaker Suppl. Decl. ¶ 36, and officials have explicitly forbidden detainees from telling their families that they are being held at Guantánamo. Montenegro Decl. ¶ 9; Babaie Suppl. Decl. ¶ 8. There is no permissible interest in prohibiting detainees from disclosing the location of their detention, particularly where the government has made this information publicly available on the ICE detainee locator website, and given their status in civil immigration detention. *See Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (First Amendment restrictions on outgoing written correspondence cannot be "greater than is necessary or essential" to protect "important or substantial interests."); Fleischaker Suppl. Decl. ¶ 36.

Defendants point to a policy to address staff misconduct, but they do not state that the policy has been applied—even when Plaintiffs' credible evidence should have triggered this policy. Green Decl. ¶ 32. And Defendants' new policy does not negate Plaintiffs' evidence of misconduct, because "better policies mean little if they are not correctly implemented in practice." *Banks v. Booth*, 468 F. Supp. 3d 101, 115 (D.D.C. 2020); *accord Thompson v. D.C.*, 832 F.3d 339, 350 (D.C. Cir. 2016) ("[W]ritten policies of a defendant are of no moment in the face of evidence that such policies are neither followed nor enforced." (cleaned up)). These conditions are unconstitutionally punitive, particularly given Defendants' lack of any legitimate justification. *E.g.*, *Kingsley v. Hendrickson*, 576 U.S. 389, 403 (2015) (unreasonable use of force); *Van Colln v. Cnty. of Ventura*, 189 F.R.D. 583, 595–97 (C.D. Cal. 1999) (restraints). Defendants state that many of these conditions existed, or currently exist, only for those placed on the military side at Camp 6. Yet that cannot save Defendants, especially given that the Memorandum authorized only detention at the MOC, not on the military side of the base.

VI.     **Transfer to Guantánamo Would Cause Plaintiffs Irreparable Harm, and the Balance of Equities and Public Interest Support Granting Stays.**

The government argues that Plaintiffs' harms are "not imminent." Opp. 38. But as explained above, the risk of harm to Plaintiffs is substantial, *supra* Section I, and, as violations of Plaintiffs' constitutional and federal rights, those harms would be grave and irreparable, Mot. 34–36. The government also argues that denying relief properly balances the equities and the public interest because "the requested relief would undermine the government's discretion to manage its limited detention resources to executive final removal orders." Opp. 39. But the government has no discretion to violate the Constitution and "cannot suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required." *TikTok Inc.*, 507 F. Supp. 3d at 115 (citation omitted). "That is because '[t]here is generally no public interest in the perpetuation of unlawful agency action.'" *Id.* (quotation omitted). Moreover, a stay here—for just ten individuals—would (contrary to the government's suggestion, Opp. 7) merely preserve the status quo. In contrast, the government's extraordinary efforts to create a punitive extraterritorial detention facility at Guantánamo lacks any operational justification and is wholly unnecessary to achieve the government's removal interests. Mot. 18-19, 22.

## CONCLUSION

For the reasons stated above and in Plaintiffs' opening brief, the Court should grant Plaintiffs' motion for a stay of transfer to Guantánamo pending the outcome of this case.

Dated: March 13, 2025

Eunice H. Cho (D.C. Bar No. 1708073)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, NW, 7th floor
Washington, DC 20005
(202) 546-6616
echo@aclu.org

My Khanh Ngo*
Kyle Virgien*
Noelle Smith*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California Street, Suite 700
San Francisco, CA 94104
(415) 343-0770
mngo@aclu.org
kvirgien@aclu.org
nsmith@aclu.org

Arthur B. Spitzer (D.C. Bar No. 235960)
Scott Michelman (D.C. Bar No. 1006945)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street, NW, Suite 722
Washington, D.C. 20045
(202) 457-0800
aspitzer@acludc.org
smichelman@acludc.org

Deepa Alagesan (D.D.C. Bar No. NY0261)
Kimberly Grano (D.D.C. Bar No. NY0512)
INTERNATIONAL REFUGEE
ASSISTANCE PROJECT
One Battery Park Plaza, 33rd Floor
New York, New York 10004
Telephone: (516) 838-7044
dalagesan@refugeerights.org
kgrano@refugeerights.org

Respectfully submitted,

/s/ *Lee Gelernt*
Lee Gelernt (D.D.C. Bar No. NY0408)
Brett Max Kaufman (D.D.C. Bar No.
NY0224)
Judy Rabinovitz*
Noor Zafar*
Omar C. Jadwat*
Wafa Junaid*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2660
lgelernt@aclu.org
bkaufman@aclu.org
jrabinovitz@aclu.org
nzafar@aclu.org
ojadwat@aclu.org
wjunaid@aclu.org

Baher Azmy*
Shayana D. Kadidal (D.C. Bar No. 454248)
J. Wells Dixon**
CENTER FOR CONSTITUTIONAL
RIGHTS
666 Broadway, Floor 7
New York, NY 10012
T: (212) 614-6427
bazmy@ccrjustice.org
shanek@ccrjustice.org
wdixon@ccrjustice.org

Jessica Myers Vosburgh*
Center for Constitutional Rights
P.O. Box 486
Birmingham, AL 35201
212.614.6492
jvosburgh@ccrjustice.org

*Attorneys for Plaintiffs-Petitioners*

*\*Appearing under certificate of pro bono
representation*

26

*\*\*Pro bono representation certificates forthcoming*