## DECLARATION OF ENGEL JIROX MONTENEGRO OLIVAS

I, Engel Jirox Montenegro Olivas, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I came to the United States from Nicaragua in January 2024 to seek asylum. I was immediately detained by immigration officers upon entry. I was detained in Texas, during which I had a credible fear interview that was negative. The immigration judge denied my appeal in March 2024 so I got a final order of deportation.

2. I was released from immigration custody in August 2024 because I could not be deported to my country. I lived in El Paso, Texas with a friend for about half a year. I had a first check-in with U.S. Immigration and Customs Enforcement (ICE) in October 2024, which I attended without any issue.

3. On January 28, 2025, I had a second appointment with ICE; this time, when I went to my appointment, I was suddenly redetained. I was told that I would be removed to my country.

4. I was detained in El Paso for several weeks until late February 2025. It was either a Monday or Wednesday, I think, when I was told that I was being taken to Louisiana. Instead, however, I was taken to a military base in Texas and then put on a military plane. The flight was about 8 hours and we were shackled during the flight. We landed and I was told that we were in Guantánamo Bay, Cuba. We were only unshackled when we were put in a room.

5. I had no idea why I was there. I have no criminal history anywhere in the world. I have never been accused of being in a gang and I have no tattoos. All I was told was that they would later bring me to another place before being taken back to my country.

6. I was detained in a very small room with five other people. The room was about 10 feet by 10 feet. We slept on mattresses. There was nothing in the room besides a bathroom and a refrigerator. We were able to shower whenever we wanted, but there was no privacy because the bathroom did not have a door or even a curtain. The room had a window that faced towards the outside of the building, but we were never allowed to open up this window, we were instructed to keep it covered. We were not let out for most of the day except for about 15 minutes. We were searched every time we left the room. During the 15 minutes we were out, we were in a very small yard.

7. We were guarded by armed military officers at Guantánamo. When we arrived, the ICE officers told us that the armed military guards had permission to shoot if we tried to escape. The guards spoke English and Spanish, so I was able to communicate with them, but some of the detainees did not speak either English or Spanish so they were not able to communicate with the guards.

8. I never had the chance to talk to an attorney while I was at Guantánamo. I was never told that I had a right to speak to an attorney. I was provided with no information on how to

    contact an attorney, and I never saw any flyers with information on how to speak to an attorney.

9. At first when I arrived to Guantánamo, I was not given an opportunity to speak with my family. For the first two days, the other detainees and I asked the guards when we would be able to communicate with our families, to which they replied that it was not possible at the moment to facilitate a phone call, but they were working on making it possible. On the third day, I was given one very short phone call lasting about a few minutes to tell my family that I was ok. But I was not allowed to say where I was detained. That was the only phone call I had during the five days that I was at Guantánamo.

10. I was brought back from Guantánamo about eight days ago, on Sunday March 2, 2025. I was shackled the entire time on the way back. I am currently detained at Pine Prairie, Louisiana, and I have no idea what will happen to me next.

11. I still do not understand why I had to be brought to Guantánamo. Being detained at Guantanamo is much worse than being detained in the United States. We were confined to a room the entire day except for 15 minutes. It was extremely hot; it felt like 80-90 degrees Fahrenheit. I had no access to phone calls except for one short call to my family where I was not allowed to share any information other than that I was alive. And we had no idea what was going on or how long we would be there.

12. Because I am currently in detention at Pine Prairie and without stable internet connection, I could not sign this declaration myself but gave consent to Talia Roma to sign on my behalf.

Executed on the 11th of March, 2025.

*/s/ Engel Jirox Montenegro Olivas*

Engel Jirox Montenegro Olivas

## ATTESTATION AND CERTIFICATE OF TRANSLATION

I, Talia Roma, certify that I am fluent in both English and Spanish. On March 11, 2025, I personally spoke with Engel Jirox Montenegro Olivas and read the foregoing declaration to him, translated into Spanish faithfully and accurately, over the phone. Mr. Montenegro Olivas affirmed that he understood my translation and that the information in the above declaration is true and accurate.

Due to Mr. Montenegro Olivas being in detention, it was not possible to obtain a written signature on the above declaration. In addition to confirming that the information in the above declaration is true, Mr. Montenegro Olivas also gave me verbal consent to sign on his behalf.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

_____
Talia Roma
Paralegal
American Civil Liberties Union Foundation
Immigrants' Rights Project
425 California Street, 7th Floor
San Francisco, CA 94609
(415) 343-0770
troma@aclu.org