**SUPPLEMENTAL DECLARATION OF JENNIFER BABAIE**

**LAS AMERICAS IMMIGRANT ADVOCACY CENTER**

I, Jennifer Babaie, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

1. I am a licensed attorney and the Advocacy and Legal Services Director at Las Americas Immigrant Advocacy Center, a nonprofit organization providing free legal services to asylum seekers and detained immigrants in Texas and New Mexico. We conduct legal screenings for detained individuals to assess eligibility for relief and provide representation.

2. I am submitting this declaration to supplement the one that I submitted in this case at ECF No. 2-15, *Espinoza Escalona v. Noem*, No. 25-cv-604 (D.D.C. Mar. 1, 2025).

3. Since the government began detaining people at Guantánamo Bay, we have attempted to assist individuals held there. This has been difficult because the government has provided no means of determining who is at Guantánamo without already knowing the individual's name, A-number, and nationality. This is different from detention centers located in the United States, where we are able to go into the facility and meet with groups of people to provide Know Your Rights presentations and conduct intakes.

4. We have been able to have one call each with two people at Guantánamo since attempting to schedule calls since Friday, March 7, 2025. Prior to March 7, we did not know how to schedule legal calls at Guantánamo. I have been included on all outgoing email requests for legal phone calls and have reviewed all follow up email communications between Las Americas and DHS in instances where I was not directly included in the correspondence.

5. Attorney access at Guantánamo has been severely restricted. Unlike in ICE detention centers, where legal calls can usually be arranged within 24 to 48 hours, there is no clear timeline for scheduling calls at Guantánamo. Requests go unanswered, the phone system is unreliable, and it is unclear whether detainees have any way to initiate contact with legal service providers. We did not hear back about our requests for calls until March 10, more than two days after the requests were sent, which did not provide us much notice. Fortunately, we were able to move our schedules to accommodate those last-minute calls.

6. Based on Las Americas' experience, even when calls do occur, they are plagued by technical issues. The phone connections were poor, making it difficult to hear or understand detainees. These issues are compounded for individuals who speak rare dialects, as interpretation services are harder to coordinate and more prone to errors over the phone. Unlike in ICE facilities, where in-person visits allow for document exchanges, nonverbal communication, and clearer interpretation, the phone-only system at Guantánamo creates significant barriers to meaningful legal representation.

7. On March 10, 2025, a Las Americas intern spoke with an individual who had been transferred from El Paso, Texas to Guantánamo in late February 2025 without prior

notice to him, his attorney, or his family, effectively cutting him off from ongoing legal representation and the ability to challenge the procedural posture of his case. While detained in El Paso, he struggled to fully communicate his fear-based claim during his CFI due to interpretation issues that repeated himself throughout his fear interview, and as a result, critical aspects of his case were misinterpreted or omitted on the final fear transcript. Rather than being given the opportunity to request a discretionary Notice to Appear on the basis of these errors, or other possible discretionary legal avenues to pursue a remedy of the language issues impacting his fear claim, he was transferred to Guantánamo, where he did not have access to his attorney's or his immediate family members' contact information. He stated that this contact information was with the officials at the base but that he did not have access to it. As of the time of his call with our office, he had yet to be given the telephone numbers of his family in the U.S. and of his attorney or any instructions on how to reach them.

8. This individual reported to us that there was no way to communicate with the outside world from Guantanamo other than one five-minute call each day if you have a telephone number of your family member memorized. He reported that U.S. government officials or representatives told him not to disclose his location to anyone, even to his family. He relayed how he felt extremely isolated because he could not speak with guards or other detainees due to the language barrier. He did not understand what was happening around him and had no access to religious services or prayer undisturbed. He told us he felt like he was losing his mind.

9. The call with this individual lasted around one hour and nineteen minutes. During the call, call quality was poor. The Las Americas intern conducting the call had to use a telephonic interpreter via our partner linguistic interpretation service to meet this individual's language needs. Due to the call quality, format necessitated by the need for language services and the limited technological resources offered to us or the potential client on the part of the government, this involved our intern calling them with her personal phone on speaker and calling the telephonic interpreter on an office phone on speaker. Our intern then placed the microphones and speakers of each phone next to each other throughout the duration of the call. At at least one point during the call, the telephonic interpreter asked the potential client to repeat his answer due to call quality.

10. When our intern spoke with the guards at the beginning and end of the call, she could hardly hear them.

11. On March 10, a legal assistant on staff spoke very briefly with another detainee. While still detained in the United States, this individual wished to be returned to their home country however this request was denied and they were transferred to Guantanamo instead. Since being imprisoned in Guantanamo, they are held alone in their cells, in solitary confinement.

12. On March 11, we planned to schedule follow up calls with both individuals we had spoken to. When we looked them up on the ICE detainee locator on March 12, it showed that they both are now detained in the United States, reflecting that they were transferred back from Guantánamo to the United States since we last spoke to them on March 10.

13. The lack of transparency surrounding attorney access at Guantánamo has directly obstructed our ability to provide legal services. There is no clear process, no accountability, and no reliable way to reach detainees. And it does not appear that the detainees are told how to request calls with attorneys. Moreover, the constant transfers of people make it extremely difficult to schedule calls as well. The government has offered no functional system for legal communication, leaving people stranded and unable to challenge their detention or deportation at Guantánamo.


Executed on the 18th day of March, 2025, at El Paso, Texas.


Jennifer Babaie
Director of Advocacy and Legal Services
Las Americas Immigrant Advocacy Center