UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MAIKER ALEJANDRO ESPINOZA ESCALONA, et al., | |
| Plaintiffs, | |
| v. | Civil Action No. 1:25-cv-00604-CJN |
| KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, et al., | |
| Defendants. | |

**DEFENDANTS' MOTION TO DISMISS AND
MEMORANDUM IN SUPPORT THEREOF**

# TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................................................... i

TABLE OF AUTHORITIES ................................................................................. ii

FACTUAL BACKGROUND ................................................................................. 2

LEGAL STANDARD ............................................................................................. 5

ARGUMENT .......................................................................................................... 7

    I.    Plaintiffs' Claims are not Justiciable. ................................................. 7

        A.    Seven Plaintiffs claims are moot as they are no longer in U.S. custody..... 7

        B.    Plaintiffs currently detained in the United States lack standing to bring this suit............................................................................................................ 9

            1.    Lack of concrete and particularized injury. ................................. 10

            2.    Lack of imminent injury. .............................................................. 11

            3.    Lack of causation and redressability............................................. 13

    II.    The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention.... 15

    III.    Plaintiffs' Fail to State a Claim Under the APA................................... 17

        A.    There has been no final agency action.................................................... 17

        B.    Transfer and removal decisions are committed to agency discretion by law........................................................................................................... 20

        C.    The Secretary has statutory authority to transfer and detain immigration detainees at NSGB. ............................................................................. 22

        D.    Defendants did not act arbitrarily or capriciously in the implementation of the Presidential Memorandum. ............................................................ 28

    IV.    To the Extent Plaintiffs Have Any Cognizable Claims, the District Court for the District of Columbia is not the Proper Venue........................................ 29

    V.    Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim. ................. 30

CONCLUSION....................................................................................................... 33

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Abdullah v. Trump,*
No. 25-5002, 2025 WL 914093 (D.C. Cir. Mar. 24, 2025) ........................................................... 7

*Am. Fed'n of Gov't Emps., AFL-CIO v. United States,*
104 F. Supp. 2d 58 (D.D.C. 2000) ...................................................................... 7, 14, 15

*Am. Nat'l Ins. Co. v. F.D.I.C.,*
642 F.3d 1137 (D.C. Cir. 2011) ....................................................................... 6

*Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.,*
No. CV 22-3118 (CKK), 2023 WL 1438376 (D.D.C. Feb. 1, 2023) .......................................... 31

*Arizona v. United States,*
567 U.S. 387 (2012) ......................................................................................... 20

*Arizonans for Official English v. Ariz.,*
520 U.S. 43 (1997) .......................................................................................... 8

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ......................................................................................... 6

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ......................................................................................... 6

*Bell v. Wolfish,*
441 U.S. 520 (1979) ......................................................................................... 31

*Bennett v. Spear,*
520 U.S. 154 (1997) ......................................................................................... 18

*Block v. Rutherford*,

468 U.S. 576 (1984) ................................................................................................ 31

*Boumediene v. Bush*,

553 U.S. 723 (2008) ................................................................................................ 26

*Braden v. 30th Jud. Cir. Ct. of Kentucky*,

410 U.S. 484 (1973) ................................................................................................ 29

*Carlson v. Landon*,

342 U.S. 524 (1952) ................................................................................................ 30

*Chamber of Com. of U.S. v. E.P.A.*,

642 F.3d 192 (D.C. Cir. 2011) ................................................................................ 11

*Chatman–Bey v. Thornburgh*,

864 F.2d 804 (D.C. Cir. 1988) ................................................................................ 30

*City of Los Angeles v. Lyons*,

461 U.S. 95 (1983) .................................................................................................. 13

*Clapper v. Amnesty Int'l USA*,

568 U.S. 398 (2013) ................................................................................... 9, 10, 11, 13

*Container Corp. of Am. v. Franchise Tax Bd.*,

463 U.S. 159 (1983) .................................................................................................. 5

*Dallas Safari Club v. Bernhardt*,

518 F. Supp. 3d 535 (D.D.C. 2021) ........................................................................ 20

*De Leon v. Holder*,

761 F.3d 336 (4th Cir. 2014) .................................................................................. 27

*Demore v. Kim*,

538 U.S. 510 (2003) ................................................................................................ 30

*Dep't of Homeland Sec. v. Thuraissigiam*,

591 U.S. 103 (2020) ................................................................................................. 3, 27

*Doe v. Kelly*,

878 F.3d 710 (9th Cir. 2017) .......................................................................................... 31

*Dufur v. U.S. Parole Comm'n*,

34 F.4th 1090 (D.C. Cir. 2022) ...................................................................................... 29

*E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*,

950 F.3d 177 (3d Cir. 2020) ........................................................................................... 27

*Edison C. F. v. Decker*,

No. 20-cv-15455-SRC, 2021 WL 1997386 (D.N.J. May 19, 2021) ................................ 21

*Flytenow, Inc. v. F.A.A.*,

808 F.3d 882 (D.C. Cir. 2015) ....................................................................................... 18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,

528 U.S. 167 (2000) ......................................................................................................... 8

*Gandarillas-Zambrana v. Bd. Immigr. Appeals*,

44 F.3d 1251 (4th Cir. 1995) .......................................................................................... 17

*Guangzu Zheng v. Decker*,

No 14-cv-4663-MHD, 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014) ............................ 16

*Gul v. Obama*,

652 F.3d 12 (D.C. Cir. 2011) ....................................................................................... 7, 8

*Han v. Lynch*,

223 F. Supp. 3d 95 (D.D.C. 2016) ................................................................................. 19

*Harisiades v. Shaughnessy*,

342 U.S. 580 (1952) ........................................................................................................ 21

*Herbert v. Nat'l Acad. of Scis.*,
974 F.2d 192 (D.C. Cir. 1992) ............................................................................................ 6

*Isenbarger v. Farmer*,
463 F. Supp. 2d 13 (D.D.C. 2006) ..................................................................................... 19

*Jacquet v. Hodgson*,
No. CIV.A. 03-11568RWZ, 2003 WL 22290360 (D. Mass. Oct. 6, 2003) .................................. 17

*Jama v. Immigr. & Customs Enf't*,
543 U.S. 335 (2005) ......................................................................................................... 18

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ..................................................................................................... 4, 16

*Kaplan v. Tod*,
267 U.S. 228 (1925) ......................................................................................................... 27

*Kerry v. Din*,
576 U.S. 86 (2015) ........................................................................................................... 21

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) ......................................................................................................... 15

*Lawyers Ass'n v. Reno*, (*AILA*),
199 F.3d 1352 (D.C. Cir. 2000) ........................................................................................... 3

*Lewis v. Cont'l. Bank Corp.*,
494 U.S. 472 (1990) ........................................................................................................... 8

*Lin Zhong v. U.S. Dep't of Just.*,
480 F.3d 104 (2d Cir. 2007) ............................................................................................... 27

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .................................................................................................. passim

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990) ................................................................................................ 18

*Mathews v. Diaz*,
426 U.S. 67 (1976) .................................................................................................. 20

*Matter of G-N-C*,
22 I. & N. Dec. 281 (BIA 1998) ............................................................................. 26

*Mendoza-Linares v. Garland*,
51 F.4th 1146 (9th Cir. 2022) ................................................................................. 30

*Narragansett Indian Tribal Historic Pres. Off. v. FERC*,
949 F.3d 8 (D.C. Cir. 2020) .................................................................................... 11

*Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans, Affs.*,
842 F. Supp. 2d 127 (D.D.C. 2012) ........................................................................ 20

*Nat'l Mar. Union of Am. v. Commander, Mil. Sealift Command*,
824 F.2d 1228 (D.C. Cir. 1987) ...................................................................... 7, 14, 15

*Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*,
461 F. Supp. 2d 24 (D.D.C. 2006) ............................................................................ 6

*Newman–Green, Inc. v. Alfonzo–Larrain*,
490 U.S. 826 (1989) ................................................................................................... 9

*Padilla-Ramirez v. Bible*,
882 F.3d 826 (9th Cir. 2017) ................................................................................... 19

*Papasan v. Allain*,
478 U.S. 265 (1986) ................................................................................................... 6

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) ................................................................................................... 4

*Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs.,*
656 F. Supp. 3d 137 (D.D.C. 2023) ................................................................. 7, 11

*Rangel v. Boehner,*
20 F. Supp. 3d 148 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) ...................................... 14

*Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*
324 F.3d 726 (D.C. Cir. 2003) ................................................................. 17

*Reno v. Am.-Arab Anti-Discrimination Comm., (AAADC),*
525 U.S. 471 (1990) ................................................................. 16, 21

*Reno v. Flores,*
507 U.S. 292 (1993) ................................................................. 30

*Rhodes v. Chapman,*
452 U.S. 337 (1981) ................................................................. 31

*RJR Nabisco, Inc. v. Eur. Cmty.,*
579 U.S. 325 (2016) ................................................................. 24

*Rumsfeld v. Padilla,*
542 U.S. 426 (2004) ................................................................. 29

*Russell v. Harman Int'l Indus., Inc.,*
945 F. Supp. 2d 68 (D.D.C. 2013), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014) ...................................... 14

*S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.,*
No. CV 18-760 (CKK), 2020 WL 3265533 (D.D.C. June 17, 2020) ........................................... 31

*Sale v. Haitian Centers Council, Inc.,*
509 U.S. 155 (1993) ................................................................. 24, 25

*Sheldon v. Sill,*
49 U.S. 441 (1850) ................................................................. 15

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ................................................................................................ 9, 10

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......................................................................................... 9, 11, 13

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .................................................................................................... 11

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ..................................................................................... 6

*Trump v. J.G.G.*,
145 S. Ct. 1003 (2025) ......................................................................................... 29, 30

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) ..................................................................................................... 2

*United States v. Al-Imam*,
373 F. Supp. 3d 247 (D.D.C. 2019) .......................................................................... 24

*United States v. Argueta-Rosales*,
819 F.3d 1149 (9th Cir. 2016) ................................................................................... 26

*United States v. Texas*,
599 U.S. 670 (2023) ................................................................................................... 16

*Van Dinh v. Reno*,
197 F.3d 427 (10th Cir. 1999) .............................................................................. 17, 21

*Vetcher v. Sessions*,
316 F. Supp. 3d 70 (D.D.C. 2018) ....................................................................... 19, 29

*Vote Forward v. DeJoy*,
No. CV 20-2405 (EGS), 2021 WL 1978805 (D.D.C. May 18, 2021) ......................... 11

*Weissman v. Nat'l R.R. Passenger Corp.*,
No. 20-cv-28, 2020 WL 4432251 (D.D.C. July 31, 2020), aff'd, 21 F.4th 854 (D.C. Cir. 2021) 13

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ................................................................................................ 12

*Wong Wing v. United States*,
163 U.S. 228 (1896) ................................................................................................ 30

*Wood v. United States*,
175 F. App'x 419 (2d Cir. 2006) ............................................................................ 17

*Zadvydas v. Davis*,
533 U.S. 678 (2001) ........................................................................................ 4, 5, 23

## Statutes

5 U.S.C. § 701(a)(1) ................................................................................................ 22

5 U.S.C. § 701(a)(2) ................................................................................................ 20

5 U.S.C. § 704 .................................................................................................... 17, 18

5 U.S.C. § 706(2)(A) ................................................................................................ 1

6 U.S.C. § 202(5) ..................................................................................................... 2

6 U.S.C. § 251 .......................................................................................................... 21

6 U.S.C. § 291 .......................................................................................................... 21

8 U.S.C. § 1101(a)(38) ...................................................................................... 25, 26

8 U.S.C. § 1103(a) ................................................................................................... 23

8 U.S.C. § 1103(a)(1) ......................................................................................... 21, 24

8 U.S.C. § 1103(a)(3) ........................................................................................... 2, 24

8 U.S.C. § 1158 .................................................................................................................... 3

8 U.S.C. § 1182(a)(6)(C) .................................................................................................... 3

8 U.S.C. § 1182(d)(5)(A) .................................................................................................... 4

8 U.S.C. § 1182(f) .............................................................................................................. 11

8 U.S.C. § 1225 .......................................................................................................... passim

8 U.S.C. § 1229a ............................................................................................................. 3, 4

8 U.S.C. § 1231(a) ............................................................................................................... 4

8 U.S.C. § 1231(a)(1)(A) ................................................................................................... 19

8 U.S.C. § 1231(a)(2) .................................................................................................... 4, 22

8 U.S.C. § 1231(a)(6) .............................................................................................. 4, 22, 25, 27

8 U.S.C. § 1231(b) ........................................................................................................ 19, 25

8 U.S.C. § 1231(b)(2) ........................................................................................................ 27

8 U.S.C. § 1231(e)(3)(A) ................................................................................................... 23

8 U.S.C. § 1231(f) .............................................................................................................. 23

8 U.S.C. § 1231(g) ...................................................................................................... passim

8 U.S.C. § 1252 ...................................................................................................... 15, 21, 22

8 U.S.C. § 1252(a)(1) .......................................................................................................... 3

8 U.S.C. § 1252(a)(5) .................................................................................................... 19, 22

8 U.S.C. § 1252(g) ........................................................................................................ 16, 17

28 U.S.C. § 1406(a) ........................................................................................................... 30

28 U.S.C. § 2241 ................................................................................................................. 1, 7, 16

**Regulations**

8 C.F.R. § 208.30(f) ...................................................................................................................... 3

By and through their undersigned counsel, Defendants respectfully move to dismiss this action pursuant to Federal Rules of Civil Procedure ("Rules") 12(b)(1) and 12(b)(6). Plaintiffs filed a complaint for declaratory and injunctive relief and petition for a writ of habeas corpus, seeking an order to prevent their potential transfer to the Naval Station Guantanamo Bay (NSGB). Plaintiffs claim that that their detention at NSGB would be inconsistent with the Secretary of Homeland Security's detention authority under the Immigration and Nationality Act (INA) and would result in Plaintiffs being subject to unconstitutional conditions of confinement. They assert these challenges under the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A); through a writ of habeas corpus, 28 U.S.C. § 2241; and under the Fifth Amendment Due Process Clause. ECF No. 1, Compl. at ¶¶ 64-80.

The case should be dismissed. First, since the Complaint was filed, seven Plaintiffs are no longer in U.S. custody, including one who was removed from the United States after a very brief stay at NSGB, ECF 28, and as a result does not have any reasonable possibility of being subject to the challenged policies, procedures, or conditions. Second, Plaintiffs who continue to be detained in the United States lack standing to challenge their prospective detention at NSGB as they are only two of the tens of thousands of immigration detainees in DHS custody and lack any reasonable basis to claim they are at imminent risk of transfer to NSGB. Third, the INA precludes judicial review of the government's exercise of discretion to transfer an alien ordered removed to an appropriate place of detention. Fourth, Plaintiffs fail to state a claim under the APA, as they only attempt to challenge presidential orders, non-final actions, and matters subject to the Secretary's discretion. At most, Plaintiffs' claims sound in habeas. Therefore, to the extent that any of the claims survive a motion to dismiss, they should be severed into individual habeas cases and transferred to the Plaintiffs' respective jurisdictions of confinement.

But even if the Court were to consider these claims under an APA lens, Plaintiffs' claims nevertheless fail because: (1) the Secretary of Homeland Security has the authority to detain individuals with final orders of removal in overseas U.S. Government facilities consistent with 8 U.S.C. §§ 1103(a)(3), 1225(b)(1)(B)(iii)(IV), 1231(a)(2) and (6), and 1231(g), as well as pursuant to the President's Memorandum, Expanding Migrant Operations Center at Naval Station Guantanamo Bay to Full Capacity (Jan. 29, 2025); and (2) Defendants have strong rationales for their decisions, thus defeating Plaintiffs' arbitrary-and-capricious claims. Finally, Plaintiffs have failed to state a substantive due process claim based on hypothetical claims fearing transfer and Defendants have provided sufficient safeguards to ensure acceptable conditions of confinement.

For all these reasons, the Court should dismiss this case in its entirety.

## FACTUAL BACKGROUND

**A.  *Legal Background.*** The Executive Branch has extensive constitutional authority in the field of immigration, and Congress has further conferred broad statutory discretion over the administration and enforcement of the nation's immigration laws. *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950); *see, e.g.*, 6 U.S.C. § 202(5); 8 U.S.C. § 1103(a)(3). Prior to January 20, 2025,[1] certain applicants for admission who were intercepted at entry or shortly after unlawfully entering the United States could be subject to an expeditious process to remove them from the United States under 8 U.S.C. § 1225(b)(1), as described herein. Under this process— known as expedited removal—applicants for admission arriving in the United States or certain other aliens (as designated by the Secretary of Homeland Security) who entered illegally and lack

---

[1] *See* Protecting the American People Against Invasion, https://www.whitehouse.gov/presidential-actions/2025/01/protecting-the-american-people-against-invasion/ (Jan. 20, 2025).

valid entry documentation or make material misrepresentations shall be "order[ed] . . . removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under [8 U.S.C. § 1158] or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i); *see* 8 U.S.C. § 1182(a)(6)(C), (a)(7); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107-10 (2020) (discussing expedited removal); *Am. Immigr. Lawyers Ass'n v. Reno* (*AILA*), 199 F.3d 1352, 1354-55 (D.C. Cir. 2000) (same). They remain subject to an expedited removal order if they do not indicate an intent to apply for asylum or express a fear of persecution, or if they are unable to show that such fear is credible. *See* 8 U.S.C. §§ 1225(b)(1)(A)(ii), 1225(b)(1)(B)(v). Individuals subject to an expedited removal order can be lawfully detained until they are removed from the United States. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). Individuals subject to an expedited removal order have very limited due process rights with respect to their admission to the United States. *See Thuraissigiam*, 591 U.S. at 138-40.  If the applicant for admission indicates a fear of return and the asylum officer determines that the applicant has a credible fear, the officer will issue a Notice to Appear, placing the applicant in removal proceedings under 8 U.S.C. § 1229a. 8 U.S.C. § 1225(b)(1)(B)(ii); 8 C.F.R. § 208.30(f). These removal proceedings provide more extensive procedures than expedited removal, *compare* 8 U.S.C. § 1229a *with* § 1225(b)(1), including a right to appeal to the Board of Immigration Appeals (Board) and petition for review by a federal appellate court. 8 U.S.C. § 1252(a)(1). An applicant for admission who demonstrates a credible fear "shall be detained for further consideration of the application for asylum."[2] 8 U.S.C. § 1225(b)(1)(B)(ii); *Jennings v. Rodriguez*, 583 U.S. 281, 297

---

[2] The only exception to § 1225(b)(1)'s detention mandate is found in 8 U.S.C. § 1182(d)(5)(A), which allows DHS to parole applicants for admission into the United States for "urgent humanitarian reasons or significant public benefit." *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) (holding the existence of § 1182(d)(5)(A)'s "express exception to detention implies that there are no other circumstances under which aliens detained under § 1225(b) may be released").

(2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until certain proceedings have concluded.").

For anyone with a final order of removal entered following removal proceedings held under 8 U.S.C. § 1229a, Congress has authorized detention under 8 U.S.C. § 1231(a) while the government works to execute the removal order. *See* 8 U.S.C. § 1231(a)(2). Section 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001), limits post-final-order detention to the period reasonably necessary to accomplish removal. 533 U.S. at 701. The Court determined that six months is a presumptively reasonable period of time to allow the government to complete removal after the removal period has commenced. *Id.* at 701.

Once the six-month period has run, and "the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, [then] the Government must respond with evidence sufficient to rebut that showing." *Id.* "This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. In making this assessment, the Supreme Court has counseled immigration habeas courts to apply "[o]rdinary principles of judicial review" in order to "give expert agencies decisionmaking leeway in matters that invoke their expertise" and "recognize [the] Executive Branch['s] primacy in foreign policy matters." *Id.* at 700 (citing *Pension Ben. Guaranty Corp. v. LTV Corp.*, 496 U.S. 633, 651-52 (1990); *Container Corp. of America v. Franchise Tax Bd.*, 463 U.S. 159, 196 (1983)). Specifically, the Supreme Court instructed habeas courts to "listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation

negotiations, are at issue, and to grant the Government appropriate leeway when its judgments rest upon foreign policy expertise." *Zadvydas*, 533 U.S. at 700.

    **B. *Factual Background.*** On January 29, 2025, the President issued a Memorandum ordering DHS and the Department of Defense (DoD) to take all necessary steps to expand the Migrant Operations Center (MOC) in NSGB to allow for the housing of "high-priority criminal aliens unlawfully present in the United States." Compl. at ¶ 32. DoD acted swiftly to comply with the President's Order by creating the Joint Task Force Southern Guard (JTF-SG) to work with DHS to operationalize the Memorandum. ECF No. 14-1, Declaration of Lieutenant Colonel Robert Green ("Green Decl.") at ¶¶ 2-3.

    The detainees are housed in two areas of the base, with the higher-threat immigration detainees housed in Camp VI and the lower-threat detainees housed at the MOC. Green Decl. at ¶¶ 3-4, 16-17; *see also* Compl. at ¶ 39. DHS has developed procedures applicable to immigration detainees at NSGB, and DoD is following and supporting DHS procedures. *See* ECF No. 14-2, Declaration of Deputy Field Office Director Juan Lopez Vega ("Lopez Vega Decl.") at ¶¶ 9-38; Green Decl. at ¶¶ 3, 6-10, 12-13, 18-19, 21-31. Defendants are providing immigration detainees access to counsel, the opportunity to make calls to family and friends, communal living, recreation time, nutrition, and medical care, and are handling searches and behavioral issues consistent with the Departments' practices. Lopez Vega Decl. at ¶¶ 9-38; Green Decl. at ¶¶ 5-6, 8, 10, 13, 19, 22.

## LEGAL STANDARD

    Under Federal Rule of Civil Procedure ("Rule") 12(b)(1), a plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). A court considering a Rule 12(b)(1) motion must "'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas*

*v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).  A court may examine materials outside the pleadings as it deems appropriate to resolve the question of its jurisdiction.  *See Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

Under Rule 12(b)(6), the Court may dismiss a Complaint where a plaintiff fails to state a claim upon which relief can be granted.  To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  When resolving a Rule 12(b)(6) motion to dismiss, the pleadings are construed broadly where all facts pleaded therein are accepted as true and inferences are viewed in a light most favorable to the plaintiff.  *Nat'l Postal Prof'l Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 27 (D.D.C. 2006) (Friedman, J.).  However, a court is not required to accept conclusory allegations or unwarranted factual deductions as true.  *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. Likewise, a court need not "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Ultimately, the focus is on the language in the complaint and whether that sets forth sufficient factual allegations to support a plaintiff's claims for relief.

**ARGUMENT**

I.    <u>**Plaintiffs' Claims are not Justiciable.**</u>

Plaintiffs' claims are not justiciable because (1) seven of the Plaintiffs have been removed

from the United States and their claims are now moot; and (2) those detained in the United States

do not have standing to assert claims challenging their hypothetical transfer to NSGB.[3]

**A.  Seven Plaintiffs' claims are moot as they are no longer in U.S. custody.**

Seven Plaintiffs, including Maiker Alejandro Espinoza Escalona who was transferred to

NSGB and departed the following night to his country of removal, are no longer in U.S. custody.

*See* Exh. B, Declaration of Assistant Field Office Director Patrick Morin ("Morin Decl.) at ¶ 7-8.[4]

Accordingly, because these individuals have been removed and are thus no longer in U.S. custody,

the Court should dismiss them from this action as their claims are moot. *See Gul v. Obama*, 652

F.3d 12, 15 (D.C. Cir. 2011) (affirming the district court's decision finding that the petitioner's

habeas claims were moot once they were no longer in U.S. custody); *see also Abdullah v. Trump*,

No. 25-5002, 2025 WL 914093 at *1 (D.C. Cir. Mar. 24, 2025) (affirming *Gul*'s holding in finding

---

[3] Additionally, one Plaintiff—Janfrank Berrios Laguna—has been released on an Order of Supervision; thus, his claim is both moot and unripe. Morin Decl. at ¶ 6. Plaintiff Berrios Laguna is no longer in U.S. custody and therefore has no valid challenge to the legality of his detention. *See* 28 U.S.C. § 2241(c)(1) ("The writ of habeas corpus shall not extend to a prisoner unless—He is in custody under or by color of the authority of the United States."). His claim is even more attenuated and speculative than the detained Plaintiffs' claims. Thus, he similarly lacks an imminent injury and cannot establish causation. *See Pharm. Rsch. & Manufacturers of Am. v. HHS,* 656 F. Supp. 3d 137, 150 (D.D.C. 2023); *Am. Fed'n of Gov't Emps., AFL-CIO v. United States*, 104 F. Supp. 2d 58, 63 (D.D.C. 2000) (citing *Nat'l Mar. Union of Am. v. Commander, Mil. Sealift Command*, 824 F.2d 1228 (D.C.Cir.1987)).

[4] As of this filing, the following Plaintiffs have been removed pursuant to final removal orders to their respective countries of origin and are no longer in U.S. custody: Maiker Alejandro Espinoza Escalona, Jackson Manuel Villa Wilheim, Jorge Alberto Castillo Cerrano, Alejandro Jose Pulido Castellano, Walter Estiver Salazar, Ghulam Muhammad, and MD Rayhan. *Compare* Compl. *with* Morin Decl. at ¶ 7-8. For the reasons discussed in this section, the seven aforementioned Plaintiffs should be dismissed from this action.

"Appellant's habeas case has been mooted by his transfer to the custody of a foreign sovereign."). Mootness is "the doctrine of standing set in a time frame." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000) (quoting *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 68 n. 22 (1997)). To present a live case or controversy to avoid dismissal on mootness grounds, the plaintiff "must continue to have a 'personal stake in the outcome' of the lawsuit." *Lewis v. Cont'l. Bank Corp.*, 494 U.S. 472, 478 (1990).

Here, simply put, the removed Plaintiffs' claims are moot because they are no longer in U.S. custody or subject to detention at NSGB. *See Gul*, 652 F.3d at 21 (finding that "[a]lthough the appellants made the necessary showing when they filed their petitions—for they were then detained at Guantanamo and so alleged—once they left U.S. custody that [requisite jurisdictional] showing no longer sufficed" and finding there is no presumption of "continuing injury" and that "the burden of demonstrating jurisdiction is properly borne by the [individual]."). The relief that these Plaintiffs sought through the Complaint is, generally, to enjoin Defendants from transferring them to and detaining them at NSGB, as well as ordering the return of individuals who had already been transferred to NSGB. *See* Compl. ¶¶ 82-85. Now that the Plaintiff has been removed to their respective designated country of removal and are not in U.S. custody, they have no injury that can be remedied with the relief sought in the Complaint.

Nor can they maintain this suit under the collateral consequences doctrine. Under this doctrine, where a former detainee has been removed, they must make an actual showing that the previously challenged detention continues to burden the individual with "concrete injuries." *Gul,* 652 F.3d at 17. As the D.C. Circuit noted in *Gul*, potential immigration consequences that flow from removal but themselves are not challenged in the operative suit cannot be concrete injuries ameliorated by an order granting relief. *Id.* at 19. The same holds true here where Plaintiffs are not

challenging their immigration proceedings, but rather, exclusively their speculated, prospective detention at NSGB. Indeed, Plaintiffs concede they do "not challenge the government's authority to . . . remove [them] to [their] home country or another statutorily authorized country" in this action. Compl. ¶ 2.

Accordingly, the removed Plaintiffs' claims are moot, they do not allege collateral consequences of their removal, and therefore, they should be dismissed from this action.

### B. Plaintiffs currently detained in the United States lack standing to bring this suit.

The remaining Plaintiffs—Hiran Malik and Josue De Jesus Torcati Sebrian—are currently detained in the United States—in Arizona and Texas respectively—who lack standing to bring this suit and should be dismissed accordingly. Morin Decl. at ¶ 5. Article III of the U.S. Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const. art. III, § 2. "One element of the case-or-controversy requirement is that [Plaintiffs] must establish that they have standing to sue." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (cleaned up). "To seek injunctive relief, a plaintiff must show that he is under threat of suffering "injury in fact" that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009).

In particular, "[t]o establish Article III standing, an injury must be concrete, particularized, and actual or imminent," *Clapper*, 568 U.S. at 409 (quotations omitted), at the time the action is filed. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 830 (1989)). The injury must demonstrate that the individual "suffered an invasion of a legally protected interest" that is not "conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotations omitted). Here, Plaintiffs fail

to establish a requisite injury in fact. Plaintiffs' claimed "injuries" here are (1) the very type of hypothetical and conjectural claims that the Supreme Court has cautioned against and (2) neither actual nor imminent. *See id.*

The remaining Plaintiffs allege two primary "layers" of speculative, future injuries (from which additional injuries allegedly flow). First, they allege that they will be transferred to NSGB. Compl. at ¶¶ 1,7. Second, Plaintiffs suggest that upon transfer to NSGB, their rights will be violated. *See id.* at ¶¶ 2, 8-9. Neither of these conjectural layers qualify as "actual" or "imminent" injury. *Clapper*, 568 U.S. at 409. Plaintiffs thus lack Article III standing.

1. Lack of concrete and particularized injury.

An injury in fact must be "concrete and particularized." *See Spokeo*, *Inc.*, 578 U.S. at 339. "For an injury to be particularized, it must affect the Plaintiff in a personal and individual way." *Id.* (internal quotations omitted). "A concrete injury must be *de facto*; that is, it must actually exist." *Id.* at 340 (internal quotations omitted). Under this analysis, Plaintiffs cannot demonstrate an actual injury, and Plaintiffs have effectively admitted as much. *See* Compl. at ¶¶ 1, 7 (noting "fear of imminent transfers to [NSGB]"); *See* Exh. A, Tr. Hr'g TRO, p.14 (Mar. 14, 2025) ("THE COURT: What is the imminent irreparable harm for the plaintiffs in this case? MR. GELERNT: Yeah. Again, we don't know that these individuals, the minute we walk out of court, will not be at Guantanamo.").]"). These Plaintiffs have not been transferred to NSGB. *See* Compl. at ¶¶ 1-7; Morin Decl. at ¶ 5-6, 8. As a result, Plaintiffs' alleged injury arising from their hypothetical transfer to and confinement at NSGB does not "actually exist" and cannot be "concrete" for that very reason. *See Spokeo*, *Inc.*, 578 U.S. at 340. Neither can their claimed injury be "particularized" since the remaining Plaintiffs have not been, and, presently, cannot, be affected in a personal and individual way by the legality of a transfer to NSGB or the conditions in that facility. *See id.* at 339. Simply put, neither the existence of immigration detention at NSGB nor the conditions there

has yet affected *these particular Plaintiffs* in a single concrete way. And the prospect that it might is simply the sort of "conjectural or hypothetical" injury that the Supreme Court has held does not establish standing. *Summers*, 555 U.S. at 493.

These Plaintiffs are, therefore, unable to show an actual injury that is concrete and particularized. *See id.* 339–40; *Vote Forward v. DeJoy*, No. CV 20-2405 (EGS), 2021 WL 1978805, at *23 (D.D.C. May 18, 2021) ("Standing to seek . . . forward-looking injunctive relief requires [Plaintiffs] to show that [they are] suffering an *ongoing* injury." (emphasis added) (citing *Narragansett Indian Tribal Historic Pres. Off. v. FERC*, 949 F.3d 8, 13 (D.C. Cir. 2020))).

### 2. Lack of imminent injury.

Where, as here, a party is alleging future injuries, the "burden to establish standing [] is 'significantly more rigorous.'" *Pharm. Rsch. & Manufacturers of Am. v. Dep't of Health & Hum. Servs.,* 656 F. Supp. 3d 137, 150 (D.D.C. 2023) (quoting *Chamber of Com. of U.S. v. E.P.A.*, 642 F.3d 192, 200 (D.C. Cir. 2011)). To demonstrate a cognizable future injury, Plaintiffs must show that (1) the "'threatened injury' is 'certainly impending,' rather than merely 'possible,'" *id.* (citing *Clapper*, 568 U.S. at 409), or (2) that "there is a substantial risk that the harm will occur." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Plaintiffs cannot make either showing for the same reason: their alleged injuries are far too speculative to be cognizable. Put differently, Plaintiffs have not shown there is a "substantial risk" that they will be transferred to NSGB and subjected to violations of their rights there. *See id.* Neither have Plaintiffs shown that transfer to NSGB and abuses there are "certainly impending." *See id.* None of the facts alleged are sufficient to permit the Court to find that Plaintiffs allege an imminent injury.

Plaintiffs' claim of imminent injury is belied by the sheer number of detainees who have been repatriated (i.e., removed or returned,  including pursuant to a legal authority such as 8 U.S.C. § 1182(f)) without ever transiting through NSGB. That number, which in 2024 ranged from 47,490

to 74,360 monthly repatriations, simply dwarfs the small number of detainees who have been transferred to NSGB since the Memorandum was issued more than three months ago. Office of Homeland Security Statistics, *Immigration Enforcement and Legal Processes Monthly Tables*, https://ohss.dhs.gov/topics/immigration/immigration-enforcement/immigration-enforcement-and-legal-processes-monthly (last updated Jan. 16, 2025); Lopez Vega Decl. at ¶¶ 7, 8. Plaintiffs may argue that the reference group should be more limited because the majority of them are Venezuelan nationals. *See generally* Compl. at ¶¶ 38 (noting that all individuals in the "first wave" of NSGB transfers were Venezuelan nationals). But three of the named Plaintiffs are not Venezuelan and instead hail from different parts of the world. Compl. ¶¶ 20–22 (identifying Plaintiffs of Afghan, Pakistani, and Bangladeshi nationality). Further, Defendants have housed detainees from more than 27 countries. Lopez Vega Decl. at ¶ 8.

Plaintiffs are unable to point to anything in the Memorandum that would suggest the government has plans to route Venezuelan detainees exclusively or even primarily through NSGB, or even at a materially higher rate than other detainees over a sustained period of time. *See generally* Compl. Instead, they are simply projecting that all future transfers to NSGB will be similar to the first wave without offering any evidence to support their assumption. In any case, even if Plaintiffs were to base their estimation of the likelihood of being transferred to NSGB using strictly Venezuelan cases as a baseline, they would still be hard-pressed to show that their transfer is "certainly impending to constitute injury in fact." *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Indeed, the government has completed removals to Venezuela from the United States, including the 190 Venezuelans who were removed from El Paso on February 10, 2025. *Las Americas v. Noam, No*. 25-cv-418, at ECF No. 14-1 (Agudelo Declaration) at ¶ 11.

In the end, this case is much like *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), *Clapper*, and *Summers*. In each case, the plaintiffs identified some factors that might elevate the possibility that they would be exposed to the conduct at issue (chokeholds, wire taps, or encountering logged forests). *Clapper*, 568 U.S. at 409; *Summers*, 555 U.S. at 493; *Lyons*, 461 U.S. at 106. But in each case, that potential injury still was neither likely nor imminent and insufficient to support standing. *Clapper*, 568 U.S. at 410-11 ("[R]espondents merely speculate and make assumptions about whether their communications with their foreign contacts will be acquired."); *Summers*, 555 U.S. at 496 ("Accepting an intention to visit the national forests as adequate to confer standing to challenge any Government action affecting any portion of those forests would be tantamount to eliminating the requirement of concrete, particularized injury in fact."); *Lyons*, 461 U.S. at 105 ("That Lyons may have been illegally choked by the police . . . does nothing to establish a real and immediate threat that he would again be stopped for a traffic violation, or for any other offense, by an officer or officers who would illegally choke him into unconsciousness without any provocation or resistance on his part."). So too here. Because Plaintiffs' injury cannot possibly be "actual or imminent" or "*certainly* impending." *See Clapper*, 568 U.S. at 409 (emphasis in original). Plaintiffs' "allegations of *possible* future injury are not sufficient," and thus fail to show injury in fact. *See id.* (emphasis in original) (internal quotations omitted).

       3.   <u>Lack of causation and redressability.</u>

"Because Plaintiffs fail to plausibly allege an injury in fact, the Court need not address causation or redressability." *Weissman v. Nat'l R.R. Passenger Corp.,* No. 20-CV-28 (TJK), 2020 WL 4432251, at *2 n.1 (D.D.C. July 31, 2020), *aff'd*, 21 F.4th 854 (D.C. Cir. 2021).

Nonetheless, had they plausibly alleged an injury in fact, *in arguendo*, they are unable to demonstrate a "causal connection between the injury and the conduct complained of." *See Lujan*, 504 U.S. at 560. Nine of the ten named Plaintiffs were not transferred to NSGB. *See* Compl. at

¶¶1, 7; Morin Decl. at ¶5-8. Thus, to arrive at this prong, the Court must—at minimum—assume that Plaintiffs will (1) be imminently transferred to NSGB and (2) be subject to a violation of their rights there. But that is exactly why this prong fails. This Court has held that Plaintiffs "will be found to lack standing if the court must accept speculative inferences and assumptions in order to connect the alleged injury with the challenged action." *Am. Fed'n of Gov't Emps., AFL-CIO (AFGE) v. United States*, 104 F. Supp. 2d 58, 63 (D.D.C. 2000) (citing *Nat'l Mar. Union of Am. v. Commander, Mil. Sealift Command*, 824 F.2d 1228 (D.C.Cir.1987)). Because the Court would need to accept "speculative inferences and assumptions" to connect Plaintiffs' alleged injury to the challenged action, Plaintiffs should "be found to lack standing." *See id.* Plaintiffs fail to show causation. The Court should thus dismiss.

Finally, assuming that the remaining Plaintiffs satisfied the first two prongs of standing, they cannot show that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal quotations omitted). This is because Plaintiffs cannot satisfy redressability when a court is unable to grant the relief requested. *See Rangel v. Boehner*, 20 F. Supp. 3d 148, 164, 175–76 (D.D.C. 2013), *aff'd*, 785 F.3d 19 (D.C. Cir. 2015) (finding the plaintiff was not able to show redressability where the court could not grant the requested relief because it involved a political question); *Russell v. Harman Int'l Indus., Inc.*, 945 F. Supp. 2d 68, 80 (D.D.C. 2013), *aff'd*, 773 F.3d 253 (D.C. Cir. 2014) (finding the plaintiff lacked standing because the court could not grant to plaintiff—who waived his right to recover relief—any relief to redress the alleged injuries).

Plaintiffs request, among other things, that the Court enjoin Defendants from exercising their authority to transfer individuals to and from NSGB. The Court lacks jurisdiction to do so and is, therefore, unable to grant the requested relief. As explained in Section III, *infra*, enjoining

Defendants from transferring individuals to and from NSGB necessarily interferes with the express authority accorded to the President and his officers to manage the removal process, and violates multiple provisions of 8 U.S.C. § 1252. Thus, even if Plaintiffs could show an injury in fact, the Court could not grant any relief that would redress such injury. Thus, Plaintiffs cannot show redressability here.

In sum, the remaining Plaintiffs' alleged injuries are far too speculative to sustain an injury in fact for the purposes of Article III standing. And even if these Plaintiffs—who are either in U.S. custody (but not detained at NSGB) or released subject to an Order of Supervision—could demonstrate a cognizable injury, the assumptions that the Court must make to connect the alleged injury with the challenged action proves fatal to any chance Plaintiffs have of successfully showing causation. *See AFGE*, 104 F. Supp. 2d at 63 (citing *Nat'l Mar. Union of Am.*, 824 F.2d 1228). Finally, because the Court is statutorily precluded from providing the injunctive relief that the remaining Plaintiffs desire, it is unable to redress the injuries they claim. These Plaintiffs lack the requisite standing to obtain the relief they seek. Accordingly, the Court should deny their Motion and dismiss this action in its entirety.

## II.    The Court Lacks Jurisdiction to Review the Government's Exercise of Discretion to Transfer an Alien Ordered Removed to an Appropriate Place of Detention.

The Court lacks jurisdiction to grant equitable relief regarding Plaintiffs' removal orders. The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (citations omitted); *see also Sheldon v. Sill*, 49 U.S. 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). The Immigration and Nationality Act deprives this Court of jurisdiction over Plaintiffs' APA claims for two independent reasons.

*First*, 8 U.S.C. § 1252(g) deprives the Court of jurisdiction to review claims arising from any decision or action to "execute removal orders." *See Jennings v. Rodriguez*, 583 U.S. 281, 292-95 (plurality) (concluding the district court lacked jurisdiction over a challenge to a "decision to . . . seek removal"). Congress spoke clearly, providing that "no court" has jurisdiction over "any cause or claim" arising from the execution of removal orders, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act. 8 U.S.C. § 1252(g). By its terms, this jurisdiction-stripping provision precludes habeas review under 28 U.S.C. § 2241, as well as review under the APA, of claims arising from a decision or action to "execute" a final order of removal. *See Reno v. Am.-Arab Anti-Discrimination Comm.* (*AAADC*), 525 U.S. 471, 482 (1990); *cf. United States v. Texas*, 599 U.S. 670, 680 (2023) ("In light of inevitable resource constraints and regularly changing public-safety and public-welfare needs, the Executive Branch must balance many factors when devising arrest and prosecution polices. That complicated balancing process in turn leaves courts without meaningful standards for assessing those policies."). The discretionary determination to transfer a detainee to an appropriate place of detention as part of a removal effort pursuant to the government's authority under 8 U.S.C. § 1231(g) is just such an unreviewable "action" taken to execute a final removal order. *See AAADC*, 525 U.S. at 485 (noting that § 1252(g) "seems clearly designed to give some measure of protection to 'no deferred action' decisions and similar discretionary determinations, providing that if they are reviewable at all, they at least will not be made the base for separate rounds of judicial intervention outside the streamlined process that Congress has designed"); *Guangzu Zheng v. Decker*, No 14-cv-4663-MHD, 2014 WL 7190993, at *16 (S.D.N.Y. Dec. 12, 2014) (holding that § 1231(g) transfer authority "is among the [Secretary of Homeland Security's] discretionary powers" (internal quotation marks omitted)); *Jacquet v. Hodgson*, No. CIV.A. 03-11568RWZ,

2003 WL 22290360, at *1 (D. Mass. Oct. 6, 2003) (holding that a court is "without power to prevent transfer of a plaintiff" because the "[Secretary of Homeland Security] shall arrange for appropriate places of detention" under § 1231(g), and "no court shall have jurisdiction" under § 1252(g) "to hear any cause or claim" arising from the discretion granted to the Secretary).

*Second*, 8 U.S.C. § 1252(a)(2)(B)(ii) similarly strips the Court of jurisdiction to grant Plaintiffs' request, where it bars review of "any other decision or action of the [Executive] the authority for which is specified under this subchapter to be in the discretion of the [Executive]." 8 U.S.C. § 1252(a)(2)(B)(ii). Here, the Executive's authority under § 1231(g) to decide the location of detention for individuals detained pending removal falls within the scope of the review bar in § 1252(a)(2)(B)(ii). That is because, under § 1231(g), DHS "necessarily has the authority to determine the location of detention of an alien in deportation proceedings," including to transfer detainees from one detention site to another. *Gandarillas-Zambrana v. Bd. Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995). The Executive's broad discretion to determine appropriate places of detention pending removal has repeatedly been recognized by federal courts after careful review of § 1231(g). *See, e.g.*, *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999); *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that the Secretary "was not required to detain [Plaintiff] in a particular state" given the Secretary's "statutory discretion" under § 1231(g)).

## III. Plaintiffs' Fail to State a Claim Under the APA.

### A. There has been no final agency action.

Plaintiffs fail to identify any final agency action to support their APA claims. The APA limits judicial review to "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. Although the requirement of finality is not jurisdictional, without final agency action, "there is no doubt that [a plaintiff] would lack a cause of action under the APA." *Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n*, 324 F.3d 726, 731 (D.C. Cir.

2003); *Flytenow, Inc. v. F.A.A.*, 808 F.3d 882, 888 (D.C. Cir. 2015). Agency actions are final if two independent conditions are met: (1) the action "mark[s] the consummation of the agency's decisionmaking process" and is not "of a merely tentative or interlocutory nature;" and (2) it is an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted).

To the extent Plaintiffs challenge the "implementation" of the President's operational directives in the Memorandum, that is not a discrete, identifiable "agency action" subject to challenge. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890-91 (1990) (holding that a plaintiff cannot challenge "the continuing (and thus constantly changing) operations" of the agency in carrying out a program, but must instead "direct its attack against some particular 'agency action' that causes it harm"). The Supreme Court was clear that the APA precludes challenges to "the entirety" of an administrative program, whereby plaintiffs seek "*wholesale* improvement" of an agency's operations "by court decree"—"rather than in the offices of [agencies] or the halls of Congress, where programmatic improvements are normally made." *Id.* at 891. "Removal decisions"—including the considerations that go into determining where an alien under a removal order is detained, transferred, or removed—"implicate our relations with foreign powers and require consideration of changing political and economic circumstances." *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 348 (2005) (internal quotation marks omitted). Accordingly, courts should decline to hear any challenge that would interfere with the complex, delicate, and considered process by which removal decisions are made in light of the particularized facts within the agency's command.

Nor is the implementation of the President's memorandum—even if it were a discrete agency action—"final" so as to be reviewable under the APA. 5 U.S.C. § 704. Although Plaintiffs'

removal orders are final actions, any challenge to those decisions are limited to "a petition for review filed with an appropriate court of appeals." *See* 8 U.S.C. § 1252(a)(5). Thus, the individual determinations Plaintiffs purportedly fear the agency might make are to transfer them to appropriate detention facilities as part of the execution of their final removal orders. But those operational determinations have not happened and, even when they do, they do not trigger the "legal consequences" of the removal efforts nor mark the "consummation" of the removal process. Instead, any legal consequences are the direct outcome of the removal order itself, and at this point nothing appears to hold back the execution of those orders other than "potential individualized determinations that [they] cannot be removed to specific countries." *Padilla-Ramirez v. Bible*, 882 F.3d 826, 833 (9th Cir. 2017); *see generally* 8 U.S.C. § 1231(b) (setting out countries to which aliens may be removed); 8 U.S.C. § 1231(a)(1)(A); *see id.* § 1231(a)(1)(B)(i) (providing that the removal period generally begins on the "date the order of removal becomes administratively final"). Furthermore, the use of a particular detention site as a temporary staging point en route to completing a removal to a designated country is purely an operational choice made entirely in the agency's discretion and attendant to the determinative final removal order, and is not a final agency action subject to any court's review. *See* 8 U.S.C. § 1231(g).

Similarly, any claims about the conditions of confinement at NSGB are not based on any identifiable final agency action. *See Vetcher v. Sessions*, 316 F. Supp. 3d 70, 79 (D.D.C. 2018) (dismissing conditions of confinement claims as failing to challenge a final agency action). Although in some jurisdictions Plaintiffs may be able to challenge conditions of confinement through a writ of habeas corpus, Plaintiffs are not detained in this jurisdiction *Jeong Seon Han v. Lynch*, 223 F. Supp. 3d 95, 99 (D.D.C. 2016) (citing 28 U.S.C. § 2241(a)), and, at most, speculate of future transfer to NSGB, *Isenbarger v. Farmer*, 463 F. Supp. 2d 13, 22 n.4 (D.D.C. 2006) (citing

*Lujan*, 504 U.S. at 560-61), neither of which is sufficient to confer habeas jurisdiction to this Court. Therefore, Plaintiffs must plead a valid APA claim in order to maintain their challenge in this court. *Id*. at 78 (holding the jurisdiction of confinement is "the only circuit under which [the detainee] may bring a *habeas* petition"). Accordingly, the Court should deny the motion on the basis that Plaintiffs have not identified a final agency action to support their APA claims.[5] *See id.* at 78-79.

> **B.    Transfer and removal decisions are committed to agency discretion by law.**

Even if APA review was generally available for residential actions, it would not be available here. The APA does not permit review of actions "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Thus, even if Plaintiffs could credibly argue that the delegation of responsibility contained in the President's internal memorandum is an agency action, it would still be barred from review, where the execution of removal orders is a process over which the Executive Branch enjoys largely unfettered discretionary control.

"A principal feature of the removal system is the broad discretion exercised by immigration officials." *Arizona v. United States*, 567 U.S. 387, 396 (2012); *see id.* at 409 (holding that decisions "touch[ing] on foreign relations . . . must be made with one voice"); *Mathews v. Diaz*, 426 U.S.

---

[5]Although Plaintiffs bring APA claims, the basis for Plaintiffs' challenge is not of final agency action, but rather agency inaction. Accordingly, the requirement of the local rules to produce an administrative record with the filing of this dispositive motion does not apply. *See* LCvR 7(n) (requirement applies "[i]n cases involving the judicial review of administrative agency *actions*") (emphasis added); *Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 539-40 (D.D.C. 2021) (Mehta, J.) (noting the two flavors of APA review—review of agency action and agency inaction—concluding both are considered on an administrative, not discovery record, on summary judgment). Moreover, the production of an administrative record at this stage is unnecessary—the United States seeks to dismiss this case not based on an administrative record but instead based on the facts alleged in the complaint and the present status of the individual Plaintiffs' detention. *See Nat'l Law Ctr. on Homelessness & Poverty v. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (Lamberth, J.) (noting that often "if an agency fails to act, there is no 'administrative record' for a federal court to review" (internal citation omitted)).

67, 81 (1976) (removal decisions "are frequently of a character more appropriate to either the Legislature or the Executive than to the Judiciary"). Indeed, "any policy *toward aliens* is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–89 (1952) (emphasis added). Here, decisions made to transfer immigration detainees to NSGB are grounded in the President's "broad power over the creation and administration of the immigration system," which necessarily includes discretion to determine where individuals will be detained to execute their removal orders. *Kerry v. Din*, 576 U.S. 86, 106 (2015) (Kennedy, J., concurring in judgment).

The Executive's discretionary authority to administer the removal process is further reinforced by the statute that governs judicial review of removal orders—8 U.S.C. § 1252, as well as § 1231(g), which gives the Secretary of Homeland Security[6] broad latitude to "arrange for *appropriate* places of detention for aliens detained pending removal or a decision on removal." *See AAADC*, 525 U.S. at 486.  Indeed, in interpreting § 1231(g), courts throughout the country have recognized that determinations regarding the location of confinement for individuals subject to removal orders are within the discretion of the Executive Branch. *See, e.g.*, *Van Dinh*, 197 F.3d at 433; *Edison C. F. v. Decker*, No. 20-cv-15455-SRC, 2021 WL 1997386, at *6 (D.N.J. May 19, 2021) ("Congress has provided the Government with considerable discretion in determining where

---

[6] Although the statute and regulations refer to the "Attorney General," these references should, in light of the Homeland Security Act of 2002, be read as references to the Secretary of Homeland Security. *See* Homeland Security Act § 471, 6 U.S.C. § 291 (abolishing the former Immigration and Naturalization Service); *id.* § 441, 6 U.S.C. § 251 (transferring immigration enforcement functions from the Department of Justice to the Department of Homeland Security); 8 U.S.C. § 1103(a)(1) ("The Secretary of Homeland Security shall be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens . . . .").

to detain aliens pending removal or the outcome of removal proceedings." (citing § 1231(g)(1))). To the extent a stay of a transfer (particularly one not even shown to be imminent) would interfere with that discretion to arrange for the detention of individuals who are subject to final removal orders—and who do not otherwise challenge the legitimacy of those removal orders, *see* 8 U.S.C. § 1252(a)(5)—the APA provides no basis for judicial review.

The APA also does not permit judicial review in cases where statute precludes it. 5 U.S.C. § 701(a)(1). As discussed below, 8 U.S.C. § 1252 plainly bars review of discretionary agency actions, actions taken to remove an individual, or actions to execute a removal order. 8 U.S.C. §§ 1252(a)(2)(B)(ii), (b)(9), (g). The statute allows for review in certain specified circumstances and subject to specified limitations and prerequisites. *See, e.g.*, 8 U.S.C. §§ 1252(a)(5), (b)(9), (e). None of those provisions, however, apply to Plaintiffs' APA claims here, which seek to constrict how the Executive can exercise its broad powers under § 1231(g) and otherwise thwart its ability to promptly execute final removal orders. Section 701(a)(1) thus bars APA review here as well.

### C.    The Secretary has statutory authority to transfer and detain immigration detainees at NSGB.

Even if their APA claims were cognizable, Plaintiffs have failed to establish that it would be unlawful to detain them at NSGB. As a result, their statutory claims fail. Plaintiffs are lawfully in the custody of the Secretary as individuals subject to final orders of removal. *See* Compl. at ¶¶ 13-22. Sections 1231(a)(2) and (6) and 1225(b)(1)(B)(iii)(IV) authorize the Secretary to detain individuals who are, respectively, subject to final orders of removal and expedited removal orders. The Secretary's authority under these provisions begins upon entry of the removal order and extends until the Secretary relinquishes custody of the detainee. *See* 8 U.S.C. §§ 1231(a)(2) and (6), 1225(b)(1)(B)(iii)(IV). Detention authority under § 1231(a)(6) is limited to the amount of time reasonably necessary to execute the removal order and will terminate if (after six months) "the

alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. In addition to having authority to detain individuals subject to final orders of removal, the Secretary also has broad statutory authority to "arrange for appropriate places of detention for aliens pending removal" at "United States Government facilities," 8 U.S.C § 1231(g), and to  "perform such other acts as [she] deems necessary for carrying out [her] authority" under the INA, 8 U.S.C § 1103(a).

Sections 1231(a)(2) and (6) and 1225(b)(1)(B)(iii)(IV) afford the Secretary extraterritorial authority to manage international removal operations. Congress understands that the execution of removal orders typically requires the Secretary—by definition—to exercise extraterritorial authority. *See, e.g.*, 8 U.S.C. § 1231(e)(3)(A) (specifying funding source for costs associated with removal); 8 U.S.C. § 1231(f) (authorizing caregiver travel for removal trip); U.S. Immigration and Customs Enforcement Budget Overview 2023 at 169 (Congress allocated more than $400 million per year for Immigration and Customs Enforcement's (ICE) Transportation and Removal Program, a program with a mission that includes providing "transportation to the noncitizen's final destination.").[7] The overwhelming majority of removals carried out under sections 1231 and 1225 are escorted removals—that is, removals where ICE officers maintain custody of the individual who are being removed from the United States and transport them to their country of removal. DHS OIG Report, OIG-19-28, ICE Faces Barriers in Timely Repatriation of Detained Aliens, at 11 (Mar. 2019) (approximately 84,000 of the 90,000 removals in fiscal year 2017 were escorted removals).

---

[7]          Available          at          https://www.dhs.gov/sites/default/files/2022-03/U.S.%20Immigration%20and%20Customs%20Enforcement_Remediated.pdf   (last   visited Mar. 3, 2025).

Section 1231(g) also affords the Secretary more narrow extraterritorial authority to select appropriate places for removal to include any "United States Government facilities." 8 U.S.C. § 1231(g); *see also RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 340 (2016) (holding that "an express statement of extraterritoriality is not essential," and "'context can be consulted as well,'" to establish the extraterritorial effect of a statute). NSGB is just such a "United States Government facility." Indeed, this Court, in considering a different federal statute, has previously defined "federal facility" to mean "a building or part thereof owned or leased by the Federal Government, where Federal employees are regularly present for the purpose of performing their official duties"—the definition encompassing both "diplomatic missions" and "component structures of military bases." *United States v. Al-Imam*, 373 F. Supp. 3d 247, 264 (D.D.C. 2019) (citing 18 U.S.C. § 930(g)). In line with the meaning of "federal facility," the Court in that case found the federal statute applied extraterritorially where the law had "foreseeable extraterritorial applications." *Id.*

Along with § 1231(g), § 1103(a)(3)'s sweeping grant of authority for the Secretary to take any action "deemed necessary" to the exercise of her other statutory authorities is also naturally read as conferring extraterritorial authority when exercised in support of her extraterritorial removal responsibilities. *Cf. Sale v. Haitian Centers Council, Inc.*, 509 U.S. 155, 171 (1993) (assuming 8 U.S.C. § 1103(a)(1) applies extraterritorially but finding exercise to be within section 1103(a)(1)'s exception).

Therefore, §§ 1103(a)(3), 1225(b)(1)(B)(iii)(IV),1231(a)(2) and (6), and 1231(g) together confer broad extraterritorial authority for ICE to carry out Congress's removal mandate. The Secretary has the authority to detain individuals subject to final orders of removal in U.S. government facilities as part of an ongoing removal operation. For individuals detained under

§ 1231(a)(6), that authority extends only so long as removal remains significantly likely to occur in the reasonably foreseeable future. The immigration detainees at NSGB fall squarely within this authority: they are subject to final orders of removal, have been taken to NSGB as part of the government's efforts to facilitate their removals, and can be held for only so long as their removal remains significantly likely to occur in the reasonably foreseeable future.

Plaintiffs argue that the government lacks the authority to transfer and detain them at NSGB because the base is outside of the United States for purposes of the INA. Compl. at ¶¶ 68-69 (citing 8 U.S.C. § 1101(a)(38)). Defendants acknowledge NSGB's status for purposes of the INA. However, the cited provisions overcome any presumption against extraterritorial application—which does not apply here given the inherent nature of removal operations. *Sale*, 509 U.S. at 173. Removal operations are inherently extraterritorial missions and therefore necessarily require the Secretary to exercise detention authority outside of the U.S. *See* Tr. Hr'g TRO, p. 24 (Plaintiffs conceding "[o]bviously the removal statutes apply extraterritorially. That's inherent.") As noted above, many of ICE's removal operations are conducted by ICE transporting the detainee to their country of removal. As a result, ICE routinely exercises its §§ 1231 and 1225 detention authority outside of the United States. Plaintiffs' contrary arguments simply set aside the reality of how removal operations have operated for decades. Section 1103(a)(3) works in conjunction with these provisions to give the Secretary all necessary authority to conduct the removal operation in her preferred manner, including to plan the removal mission and arrange for appropriate staging points to support that mission. Indeed, it would lead to an impossible situation if the government's broad powers under the INA were held to instantly terminate upon the detainee's flight leaving U.S airspace but before ICE relinquishes control. Detainees placed on ICE-operated removal missions must remain subject to ICE custody until ICE relinquishes custody. *See* 8 U.S.C. §

1231(b) (setting out the categories of countries to which aliens may be removed). None of that would be possible unless DHS's authority to execute removal operations has an extraterritorial component.

Plaintiffs next argue that the immigration detainees at NSGB have been improperly removed to Cuba, *see generally* Compl. at ¶ 65 (claiming "Cuba is not a proper removal destination for Plaintiffs"), assuming that removal occurs as soon as the individual leaves the United States without regard to whether he continues to be in the Secretary's custody or has reached his country of removal. Plaintiffs' theory is not supported by law or common sense for two reasons.

*First*, although NSGB is not in the United States for purposes of the INA, 8 U.S.C. § 1101(a)(38), the United States "exercises complete jurisdiction and control" over the naval station. *Boumediene v. Bush*, 553 U.S. 723, 753-55 (2008) (finding "the United States, by virtue of its complete jurisdiction and control over the base, maintains *de facto* sovereignty over this territory"). There is no Cuban government presence at NSGB and no way for Cuban authorities to exercise any control over the detainees. While they may have physically departed the United States and transited through NSGB, DHS has not completed the removal mission and has certainly not surrendered them to the control of the Cuban government.

*Second*, Plaintiffs ignore that "removal" as contemplated by the INA is a legal term of art that refers to a circumscribed, multi-step process that often involves detention, transfer, and travel. *Matter of G-N-C*, 22 I. & N. Dec. 281, 296-97 (BIA 1998) ("'Removal'" is a term of art that was coined in the enactment of the IIRIRA"); *cf. United States v. Argueta-Rosales*, 819 F.3d 1149, 1155 (9th Cir. 2016) (noting that under the INA, "enter" can have "a narrower meaning than its colloquial usage). Just as a detainee who, while being escorted, has a layover en route to their final destination is not removed "to" that location, the immigration detainees have not been removed to

NSGB. Conversely, by Plaintiffs' logic, if a removal flight in route to Romania were to make an overnight refueling stop in Germany, DHS would be compelled to release the detainees in Germany as the agency would lack authority to continue the removal operation to the final destination after having already "removed" the detainees "to" Germany. But that has never been the law and makes little sense as a practical matter. Here, the term "removal" as it is used in section 1231(a)(6) is not intended as a limitation or termination point on the Secretary's detention authority. *See* 8 U.S.C. § 1231(a)(6) ("An alien . . . may be detained beyond the removal period"). Therefore, Plaintiffs' narrow understanding of the term "removal" should not have any impact on the Secretary's authority to detain through to completion of the multi-step removal process.

Just as an alien "on the threshold" of entry when he is detained after arriving at a United States port, an alien detained in the process of being removed to the country designated in his removal order is "on the threshold" of removal—in both cases, physical presence or location is not allowed to dictate the individual's legal status or situation. *Thuraissigiam*, 591 U.S. at 140; 8 U.S.C § 1231(b)(2); *cf. De Leon v. Holder*, 761 F.3d 336, 338 (4th Cir. 2014) (holding that "entry" into the United States for immigration purposes requires *"freedom from official restraint,"* which is present when "the alien who is attempting entry is no[t] under constraint emanating from the government that would otherwise prevent [him] from physically passing on"); *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (entrant was "in theory of law at the boundary line and had gained no foothold in the United States" even after committed to the custody of aid society). Indeed, the removal process is not complete until the individual reaches the final destination. *See E.O.H.C. v. Sec'y United States Dep't of Homeland Sec.*, 950 F.3d 177, 184 (3d Cir. 2020) (*citing Lin Zhong v. DOJ*, 480 F.3d 104, 108 n.3 (2d Cir. 2007).

Here, the government has not relinquished custody of the detainees and has explicitly stated that the removal operation is ongoing. Therefore, the Secretary's detention authority continues to exist as it pertains to immigrant detainees with final removal orders in transit but in custody of the United States.

### D. Defendants did not act arbitrarily or capriciously in the implementation of the Presidential Memorandum.

Plaintiffs also fail to state an arbitrary or capricious APA claim. First, Plaintiffs argue that Defendants' actions are inconsistent with the Memorandum because detainees are being held at Camp VI and Plaintiffs allege some of the detainees at NSGB are low-risk. Compl. at ¶ 73. Plaintiffs' argument incorrectly assumes that Defendants' authority to hold immigration detainees is based solely on the Memorandum. But, as discussed above, the Secretary has broad discretion to take the same actions by statute, both independent of and consistent with, the Memorandum. *See supra* Argument III. Moreover, absent one who was briefly staged there but has now departed to his country of removal, none of the remaining Plaintiffs are presently held at NSGB and have no basis to speculate whether they will be held at Camp VI. *See supra* Argument II.

Second, Plaintiffs argue Defendants' failure to explain the reasons for transferring immigration detainees to NSGB is arbitrary and capricious. Compl. at ¶ 72. As explained above, *see supra* Argument III, Defendants have wide discretion to detain individuals with final orders of removal, to plan and carry out removal missions, and to select appropriate places of detention. Plaintiffs have not identified any instance in which a Court required the government to justify using a particular detention facility or its removal path.

To the extent the APA calls for further justification, Defendants have explained that they are using NSGB due to limited detention capacity available elsewhere, making it desirable to add the capacity already available at NSGB to accomplish the President's priority of completing the

removal of individuals with final orders of removal. Lopez Vega Decl. at ¶¶ 5, 6. Utilizing unused

detention capacity is rational response to limited resources and not arbitrary and capricious.

Plaintiffs' policy-laden disagreements with Defendants' reasons for transferring detainees to

NSGB alone do not warrant them relief under the APA.

## IV.    To the Extent Plaintiffs Have Any Cognizable Claims, the District Court for the District of Columbia is not the Proper Venue.

As demonstrated above, Plaintiffs fail to shoehorn their claims into ones reviewable under

the APA. At best, Plaintiffs have pled habeas claims that, if they survive dismissal, would need to

be severed and transferred to other jurisdictions. Accordingly, these claims do not confer upon this

Court authority to enter temporary relief both because the Court lacks jurisdiction over the claims

and Plaintiffs are unable to show that they are likely to prevail in this Court.

The two Plaintiffs detained under U.S. custody have never been held in this district.

Plaintiffs Malik and Torcati Sebrian are detained at facilities in Arizona and Texas respectively.

As the Supreme Court and D.C. Circuit have consistently recognized, any habeas claims must be

brought against the custodians of those facilities (the "immediate custodian rule") and in the

venues in which the custodians reside (the "habeas venue rule"). *See Trump v. J. G. G.*, 145 S. Ct.

1003, 1005-06 (2025) (citing *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)) (For "'core habeas

petitions,' 'jurisdiction lies in only one district: the district of confinement.'"); *Dufur v. U.S. Parole

Comm'n*, 34 F.4th 1090, 1097 (D.C. Cir. 2022); *Vetcher,* 316 F. Supp. 3d at 78 (identifying the

district of confinement as the only appropriate venue for a habeas petition); *see also Braden v.

30th Jud. Cir. Ct. of Kentucky*, 410 U.S. 484, 494-95 (1973) ("The writ of habeas corpus does not

act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be

unlawful custody."); *Chatman–Bey v. Thornburgh*, 864 F.2d 804, 810 (D.C. Cir. 1988).[8] The Supreme Court recently reinforced this principle in *J.G.G.*, where they held that "[r]egardless of whether the detainees formally request release from confinement, because their claims for relief 'necessarily imply the invalidity' of their confinement and removal under the [cited authority], their claims fall within the "core" of the writ of habeas corpus and thus must be brought in habeas." 145 S. Ct. at 1005 (cleaned up). Thus, unless Plaintiffs are transferred within the authority of this district, this case should be dismissed for lack of venue. *See* 28 U.S.C. § 1406(a); *see also Mendoza-Linares v. Garland*, 51 F.4th 1146, 1157 (9th Cir. 2022) (dismissing challenge to expedited removal order in part for failing to follow the requirement under Federal Rule of Appellate Procedure 22 to file in the district of confinement).

Because Plaintiffs' claims, to the extent any remain following a motion to dismiss, will need to be severed and transferred as individual habeas petitions to other federal district courts, this Court lacks jurisdiction and should dismiss this action.

## V.    <u>Plaintiffs Fail to Plausibly Allege a Substantive Due Process Claim.</u>

The Supreme Court has repeatedly held that civil immigration detention is lawful exercise of executive authority. *See, e.g.*, *Demore v. Kim*, 538 U.S. 510, 531 (2003) ("Detention during removal proceedings is a constitutionally permissible part of that process."); *Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of this deportation procedure."); *Wong Wing v. United States*, 163 U.S. 228, 235 (1896) ("We think it clear that detention or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens, would be valid."); *see also Reno v. Flores*, 507 U.S. 292, 294-95 (1993)

---

[8] For Plaintiff Sebrian, the proper venue would be in the U.S. District Court for the Western District of Texas, Austin Division. And for Plaintiff Malik, his habeas claim should be brought in the U.S. District Court for the District of Arizona, Phoenix Division.

(concluding the executive has "broad discretion to determine whether, and on what terms" an individual can be detained or released pending deportation). Applied here, the government has amply supported its basis for detaining individuals with final orders of removal at NSGB.

Ordinarily, when it is alleged that a detainee in immigration detention has been deprived of liberty without due process, "the dispositive inquiry is whether the challenged condition, practice, or policy constitutes punishment." *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-760 (CKK), 2020 WL 3265533, at *18 (D.D.C. June 17, 2020) (quoting *Block v. Rutherford*, 468 U.S. 576, 583 (1984)). To prevail on such a claim, the detainee must establish either a "subjective intent to punish" or "that a restriction is unreasonable or excessive relative to the Government's proffered justification." *Americans for Immigrant Just. v. U.S. Dep't of Homeland Sec.*, No. CV 22-3118 (CKK), 2023 WL 1438376, at *11 (D.D.C. Feb. 1, 2023); *Doe v. Kelly*, 878 F.3d 710, 714 (9th Cir. 2017). Plaintiffs attempt to meet that standard by asserting that the conditions at NSGB are sub-par, Compl. at ¶ 77, but the Constitution "does not mandate comfortable" detention facilities. *Rhodes v. Chapman*, 452 U.S. 337, 345-50 (1981). Detention may be subject to conditions that relate to legitimate non-punitive governmental objectives, such as "maintain[ing] security and order at the institution and mak[ing] certain no weapons or illicit drugs reach detainees" without raising constitutional concerns. *Bell v. Wolfish*, 441 U.S. 520, 540 (1979). If the detainee can establish that his conditions of confinement are equal to or worse than conditions experienced by inmates convicted of a criminal offense, the burden shifts to the government to establish that the conditions are "rationally related to a non-punitive purpose and . . . not excessive." *Americans for Immigrant Just.*, 2023 WL 1438376, at *12.

However, here, we are only faced with vague and undefined claims of sub-par conditions of confinement that none of the Plaintiffs assert that they have been subject to. *See generally*

- 31 -

Compl. ¶ 77. That Plaintiffs would ever be exposed to such conditions is thus entirely speculative and hence Plaintiffs lack Article III standing to challenge such hypothesized conditions. *See supra* Argument II.

Further, given the speculative nature of their claims, Plaintiffs also fail to cite any relevant case law to show how courts should evaluate such a claim. Assuming Plaintiffs have standing and are able to bring such a claim under the APA, the relevant legal inquiry should be directed to the procedures in place at the challenged facility, rather than on allegations by non-parties. As detailed in previously submitted declarations and summarized below, Defendants have core procedures in place to ensure detainees' needs are appropriately met while detained at NSGB. *See generally* Lopez Vega Decl.; Green Decl.

Immigration detainees are housed in a communal living setting, and are afforded daily recreation time, three daily meals, and access to medical care. Lopez Vega Decl. at ¶¶ 21, 26, 27, 28, 33, 36; Green Decl. at ¶¶ 4, 8, 10. Immigration detainees have access to counsel, the ability to make and receive unmonitored calls to their lawyers, and the ability to make and receive calls to obtain representation. Lopez Vega Decl. at ¶¶ 1-15, 17-18, 31, 37-38; Green Decl. at ¶ 22. Detainees have the opportunity to make short calls to family and friends. Lopez Vega Decl. at ¶¶ 20, 31, 38; Green Decl. at ¶ 22. They are subject to searches and behavior correction in a manner not inconsistent with the Departments' practices. Lopez Vega Decl. at ¶ 23; Green Decl. at ¶¶ 23-28. These procedures offer sufficient safeguards and eliminate any basis for enjoining transfer based on conditions allegations. In light of those policies, it is entirely speculative that Plaintiffs would be exposed to unconstitutional conditions and Plaintiffs have failed to establish Article III standing to challenge such postulated conditions.

## CONCLUSION

For the foregoing reasons, the Court should dismiss this action. A proposed order is enclosed herewith.

Dated: May 19, 2025
        Washington, DC

Respectfully submitted,

YAAKOV M. ROTH
*Acting Assistant Attorney General*

DREW ENSIGN
*Deputy Assistant Attorney General*

SARAH WILSON
ASSISTANT DIRECTOR
Office of Immigration Litigation

By: */s/  Jason K. Zubata*
_____
     JASON K. ZUBATA
     Trial Attorney
     Office of Immigration Litigation
     U.S. Department of Justice, Civil Division
     P.O. Box 868, Ben Franklin Station
     Washington D.C. 20044
     Telephone: (202) 532-4143
     Email: Jason.k.zubata@usdoj.gov

*Attorneys for Defendant*

- 33 -